Melissa Higbee, SBN 62465
Taryn R. Murray, *Pro Hac Vice*
HIGBEE & ASSOCIATES
1504 Brookhollow Drive, Suite #112
Santa Ana, CA 92705
(714) 617-8373
mh@higbee.law
tmurray@higbee.law
*Attorneys for Plaintiff Trunk Archive*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| GREAT BOWERY INC d/b/a TRUNK ARCHIVE,<br><br>    Plaintiff,<br><br>v.<br><br>CONSEQUENCE SOUND LLC, CONSEQUENCE MEDIA GROUP INC., and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No.<br><br>**MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................... 1

     A.   Annie Leibovitz Created the Star Wars Photographs ...................................... 1

     B.   Trunk Archive is The Exclusive Licensor Of The Star Wars Photographs .... 3

     C.   Defendant Engaged in Mass Infringement Of The Star Wars Photographs ... 4

II.   SUMMARY JUDGMENT STANDARD ................................................. 6

III.   SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT CS 6

     A.   As The Exclusive Licensor Of The Photographs, Trunk Archive Has Standing To Pursue A Copyright Infringement Claim Against Defendant ..................... 7

     B.   The Photograph Qualify for The Statutory Presumption of Validity ............. 9

     C.   Defendant CS Liable for Violation Of The Display Right and the Right to Reproduce the Star Wars Photograph .................................................. 11

         i.   Defendant CS is Liable For Copyright Infringement as a Direct Infringer..................................................................... 11

         ii.   Defendant CS is Liable for Copyright Infringement as a Vicarious Infringer............................................................................ 13

IV.   DEFENDANT'S AFFIMATIVE DEFENSES ALSO FAIL ........................................... 17

     A.   Failure to State A Claim ........................................................... 17

     B.   Fair Use ................................................................................ 17

         i.   The Purpose and Character of the Use Weighs Against A Finding of Fair Use.................................................................... 17

         ii.   The Nature of the Copyrighted Work Weights Against A Finding of Fair Use ......................................................... 19

         iii.   The Amount and Substantiality Of the Portions Used Weighs Against a Finding of Fair Use ......................................... 20

         iv.   The Effect On The Market Place Weighs Against A Finding of Fair Use ............................................................. 21

V.   TRUNK ARCHIVE IS ENTITELED TO SEEK STATUTORY DAMAGES............. 22

VI.   CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

## STATUTES

17 U.S.C. § 101.................................................................................................12

17 U.S.C. § 102(a)(5).....................................................................................10, 20

17 U.S.C. § 106...............................................................................................11

17 U.S.C. § 106(1).....................................................................................11, 12, 13

17 U.S.C. § 106(5).....................................................................................11, 12, 13

17 U.S.C. § 107...............................................................................................18

17 U.S.C. § 204.................................................................................................8

17 U.S.C. § 410(c).........................................................................................9, 10

17 U.S.C. § 412(2)............................................................................................22

17 U.S.C. § 501(b)............................................................................................7

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56..........................................................................................1, 6

## CASES

**U.S. Supreme Court**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) .................................6

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
143 S. Ct. 1258, 1274 (2023) .................................................................18

*Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53 (1884).........................10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, (1994) .........................18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).............................................6

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) .................6, 7, 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, n.9 (2005).13

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) ........................................................................18, 21

*Sheldon v. Metro-Goldwyn Pictures Corp.*, 471 U.S. 539, 565 (1985) ................20

**2nd Circuit Court of Appeals**

*Bill Graham Archives v. Dorling Kindersley Ltd.*
448 F.3d 605, 613 (2d Cir. 2006)..........................................................20, 21

*Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013)............................................21

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,

697 F.2d 27, 36 (2nd Cir.1982)................................................................8

*Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018).19

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
443 F.2d 1159, 1162 (2d Cir. 1971)......................................................13

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998) ............................20

*Ringgold v. Black Entm't TV, Inc.,* 126 F.3d 70, 79 (2d Cir. 1997) .....................20

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2nd Cir. 1963).14

*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*,
778 F.2d 89, 92 (2d Cir. 1985).................................................................11

## 6th Circuit Court of Appeals

*Pro Arts, Inc. v. Hustler Magazine, Inc.* 787 F.2d 592 (6th Cir. 1986) ...............20

## 9th Circuit Court of Appeals

*DRK Photo v. McGraw-Hill Global Education Holdings, LLC*,
870 F.3d 978, 983 (9th Cir. 2017) ..........................................................7

*Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir. 2000)....................10

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958, 965 (9th Cir. 2010) ........................................................7

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996)............15

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 7
95 F.3d 997, 1003 (9th Cir. 2015) ........................................................7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146, 1173 (9th Cir. 2007) .....................................................15

## 10th Circuit Court of Appeals

*Diversey v. Schmidly*, 738 F.3d 1196, 1204(10th Cir. 2013)...............................13

## 11th Circuit Court of Appeals

*Rose v. M/V "GULF STREAM FALCON"*,
186 F.3d 1345, 1350 (11th Cir. 1999). ..................................................7

*Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ...............11, 12

## California District Courts

*UMGRecordings, Inc. v. Disco Azteca Distributors, Inc.*,

446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006).......................................11

## Colorado District Courts

*Broad. Music, Inc. v. Carey-On Saloon, LLC*, 2014

MOTION FOR SUMMARY JUDGMENT

U.S. Dist. LEXIS 16312, *13-14 (D. Col., Feb. 7, 2014).....................................14

*Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, 2022
U.S. Dist. LEXIS 187487, *23, (D. Col., Oct. 13, 2022) ....................................11

**Florida District Courts**

*Applied Concepts Unleashed, Inc. v. Matthews*, 2012
U.S. Dist. LEXIS 195153  (S.D. Fla.).....................................................................7

*Disney Enters. v. Hotfile Corp*., 798 F. Supp. 2d 1303 .......................................13

*Joe Hand Promotions, Inc. v. Phillips*, No. 19-21723-CIV, 2020
U.S. Dist. LEXIS 107981, 2020 (S.D. Fla. June 19, 2020) ................................12

*Latele Television, C.A. v. Telemundo Commc'ns Grp*., LLC, No. 12-22539-CIV,
2014 U.S. Dist. LEXIS 174887, at *5 (S.D. Fla. Dec. 18, 2014) .........................15

*Playboy Enters. v. Starware Publishing Corp*.,
900 F. Supp. 433, 436 (S.D. Fla. 1995) ...............................................................12

*Umg Recordings, Inc. v. Vital Pharms., Inc*., 2022
U.S. Dist. LEXIS 122046 (S.D.Fla. 2022)...........................................................12

**Kansas District Courts**

*Paramount Pictures Corp. v. Video Broad. Sys., Inc*.,
724 F. Supp. 808, 819 (D. Kan. 1989) .................................................................11

**Mississippi District Courts**

*Southern Mississippi Planning & Dev. Dist.*, Inc. v. Robertson,
660 F. Supp. 1057, 1062 (S.D. Miss. 1986)..........................................................16

**New York District Courts**

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) .........................................................19

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co*.,
274 F. 932, 934 (S.D.N.Y. 1921)..........................................................................10

*Otto v. Hearst Communs., Inc.,* 345 F. Supp. 3d 412, 428 (S.D.N.Y. 2018).........19

**Texas District Courts**

*Playboy Enters., Inc. v. Webbworld Inc*.,
991 F. Supp. 543, 554 (N.D. Tex. 1997) .............................................................16

*Red Giant, Inc. v. Molzan, Inc.,* 2009 U.S. Dist.
LEXIS 63990, at *20 (S.D. Tex. July 24, 2009)...................................................16

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
384 F. Supp. 3d 743, 761 (W.D. Tex. 2019)........................................................12

**Utah District Courts**

*See Great Bowery v. Best Little Sites*, No. 2:21-cv- 00567-DBB-JCB,
2023 U.S. Dist. LEXIS 77562, at *25 (D. Utah May 2, 2023).....................................8

**Florida Supreme Court**

*Arden Shoe Corp. v. Dr. MW*. Locke Shoes of Miami, Inc.,
50 So.2d 120, 122 (Fla. 1951) ..........................................................................7

**TREATISES**

4 *Nimmer & Nimmer*, § 13.05[A][1][c], at 13-167..........................................................18

<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Great Bowery, Inc. d/b/a Trunk Archive ("Trunk Archive") moves, pursuant to Federal of Civil Procedure 56, for summary judgment as to liability for copyright infringement against Defendant Consequence Sound LLC ("CS") as a direct infringer and as a vicarious infringer. Trunk Archive also moves for summary judgment as to its entitlement to statutory damages and attorney's fees and as to all affirmative defenses asserted by Defendant.

## I.      INTRODUCTION

Plaintiff Trunk Archive is a full-service photography licensing agency representing some of the most prominent photographers and iconic images in the world. Exhibit 36 at ¶9. One of Trunk Archive's most prominent clients is American portrait photographer Annie Leibovitz. *Id.* at ¶11.

### A.  Annie Leibovitz Created the Star Wars Photographs

Between 2014 and 2019, Leibovitz took a series of photographs of the cast and crew of *Star Wars: The Force Awakens, Star Wars: The Last Jedi*, and *Star Wars: The Rise of Skywalker*, thirty-one of which make up the subject matter of this lawsuit ("Star Wars Photographs"). The Star Wars Photographs are broken down as follows:

- The "Episode VII Photographs"
    o A photograph of actor Adam Driver as Kylo Ren ("Kylo Photograph"). Exhibit 1.
    o A Photograph of various actors playing galactic travelers and smugglers ("Smuggler Photograph"). Exhibit 2.
    o A photograph of actors Daisy Ridley, John Boyega, and Harrison Ford as Rey, Finn, and Han Solo respectively, aboard the Millennium Falcon with Chewbacca and BB-8 ("Millennium Falcon Photograph"). Exhibit 3.
    o A photograph of actress Lupita Nyong'o as she did C.G.I tracking work to capture her character Maz Katana ("Nyong'o Photograph"). Exhibit 4.
    o A photograph of actor Oscar Isaac as Poe Dameron ("Dameron Photograph") Exhibit 5.
    o Two photographs of behind-the-scenes production of Star Wars: The Force Awakens ("Force Production Photographs"). Exhibit 6.

- The "Episode VIII Photographs"
  - A photograph of actors Domhnall Gleeson, Adam Driver, and Gwendoline Christie as General Hux, Kylo Ren, and Captain Phasma respectively ("Empire Photograph"). Exhibit 8.
  - A photograph of actress Laura Dern as Vice Admiral Holdo ("Holdo Photograph"). Exhibit 9.
  - A photograph of actress Daisy Ridley as Rey in the Millenium Falcon with Chewbacca ("Rey and Chewy Photograph"). Exhibit 10.
  - A photograph of actor Adam Driver as Kylo Ren, holding up a red lightsaber ("Red Lightsaber Photograph"). Exhibit 11.
  - A photograph of actors Carrie Fisher, Oscar Isaac, John Boyega, and Kelly Marie Tran as Leia Organa, Poe Dameron, Finn, and Rose Tico standing with BB-8 ("BB-8 Photograph"). Exhibit 12.
  - A photograph of actress Carrie Fisher and her daughter Billie Lourd as Leia Organa and Kaydel Ko Connix ("Connix Photograph"). Exhibit 13.
  - A photograph of actors Mark Hamill and Carrie Fisher as Luke Skywalker and Leia Organa ("Skywalker Photograph"). Exhibit 14.
  - Two photographs of various actors dressed up as partygoers at the Canto Bright casino ("Canto Bright Photographs"). Exhibit 15.
  - A photograph of actor Benecio Del Toro as DJ ("DJ Photograph"). Exhibit 16.
  - A photograph of actress Daisy Ridley as Rey holding a blue lightsaber ("Blue Lightsaber Photograph"). Exhibit 17.
  - Two photographs of behind-the-scenes production of Star Wars: The Last Jedi ("Last Jedi Production Photographs"). Exhibit 18.

- The "Episode IX Photographs"
  - A photograph of actors Oscar Isaac and Billy Dee Williams as Poe Dameron and Lando Calrissian with BB-8 and Chewbacca in the Millenium Falcon ("Lando Photograph"). Exhibit 20.
  - A photograph of actor Mark Hamill as Luke Skywalker with R2-D2 ("R2-D2 Photograph"). Exhibit 21.
  - A photograph of actors Domhnall Gleeson and Richard E. Grant as General Hux and Allegiant General Pryde ("Hux Photograph"). Exhibit 22.
  - A photograph of actors John Boyega and Naomi Ackle as Finn and Jannah ("Finn Photograph"). Exhibit 23.
  - A photograph of actors Adam Driver and Daisy Ridley as Kylo Ren and Rey engaged in a lightsaber battle ("Battle Photograph"). Exhibit 24.
  - A photograph of actress Daisy Ridley as Rey ("Rey Photograph"). Exhibit 25.
  - A photograph of actress Keri Russell as Zorii Bliss ("Bliss Photograph"). Exhibit 26.

MOTION FOR SUMMARY JUDGMENT

o Four behind-the-scenes photographs of the production of *Star Wars: The Rise of Skywalker* ("ROS Production Photographs"). Exhibit 27.

Leibovitz registered the Star Wars Photographs with the United States Copyright Office. Leibovitz Decl. ¶10-12; ¶24-26; ¶35-37. The Episode VII Photographs were registered as part of a group registration of photographs under registration certificate VA 2-056-929 with an effective date of October 17, 2016. Exhibit 7. Leibovitz also registered the Episode VIII Photographs as part of a group registration of photographs under registration certificate VA 2-111-252 with an effective registration date of July 10, 2017. Exhibit 19. Leibovitz also registered the Episode IX Photographs as part of a group registration of photographs under registration certificate VA 2-192-380 with an effective registration date of January 16, 2020. Exhibit 28.

**B. Trunk Archive is The Exclusive Licensor Of The Star Wars Photographs**

On or about November 12, 2014, Leibovitz entered into an agreement ("Artist Agreement") with Trunk Archive for exclusive worldwide representation to license her photographs. Exhibit 29. Under the terms of the Artist Agreement, Leibovitz granted Trunk Archive "the exclusive worldwide right to license, market, and promote" her photographs "for all uses in any and all media." Exhibit 29, ¶ 1.

On or about May 4, 2015, the publication Vanity Fair published an article titled "The Cast of *Star Wars: The Force Awakens* in *Vanity Fair*" ("2015 Vanity Fair Article"). Exhibit 30. The Episode VII Photographs were first published in the 2015 Vanity Fair Article as an exclusive. *Ibid.*

After publication, Leibovitz provided the Episode VII Photographs to Trunk Archive under the terms of the Artist Agreement so that Trunk Archive could be the exclusive licensor of these Photographs for any other publication that wished to license them. *See* Leibovitz Decl. at ¶44.

On or about May 24, 2017, the publication Vanity Fair published an article titled "See Annie Leibovitz's Exclusive Cast Portraits of *Star Wars: The Last Jedi* for *Vanity Fair*" ("2017 Vanity Fair Article"). Exhibit 31. The Episode VIII Photographs were first published in the 2017 Vanity Fair Article as an exclusive. *Ibid.*

After publication, Leibovitz provided the Episode VIII Photographs to Trunk Archive under the terms of the Artist Agreement so that Trunk Archive could be the exclusive licensor of these Photographs for any other publication that wished to license them. *See* Leibovitz Decl. at ¶48.

On or about May 22, 2019, the publication Vanity Fair published an article titled "*Star Wars: The Rise of Skywalker* Photos: Meet the Characters and Go on Set" ("2019 Vanity Fair Article"). Exhibit 32. The Episode IX Photographs were first published in the 2019 Vanity Fair Article as an exclusive. *Ibid.*

After publication, Leibovitz provided the Episode IX Photographs to Trunk Archive under the terms of the Artist Agreement so that Trunk Archive could be the exclusive licensor of these Photographs for any other publications that wished to license them. *See* Leibovitz Decl. at ¶52.

**C. Defendant Engaged in Mass Infringement Of The Star Wars Photographs**

Defendant CS owns, operates, and manages the website www.consequence.net (the "Website"). Exhibit 36, Complaint at ¶29; Exhibit 36, Answer at ¶29. Defendant CS is a news and entertainment media company that provides extensive coverage of movies, television, and other pop culture news items on its website and social media platforms. Exhibit 36, Complaint at ¶27; Exhibit 37, Answer at ¶27. Defendant CS generates revenue from the Website via advertising, live events, sponsorship and performance marketing. Exhibit 39, ROGS No. 12.

Defendant CS has the right and ability to control the Website. Exhibit 38, RFA No. 2. Defendant CS has the right to review any content that appears on the Website. *Id* at No. 2. Defendant CS has authored content that appears on the Website. *Id* at No. 16. Defendant CS has the right to cause any content that appears on the Website to be removed. *Id* at No. 6. Further, Defendant CS authorizes its editors to select, create, review, and publish content to the Website. Exhibit 39, ROGS Nos. 5, 10, 14. Defendant CS also authorizes its editors to review content before it is published to the Website. *Id* at Nos. 10, 15. Defendant CS further authorizes editors to select content based on "newsworthiness". *Id* at No. 14. Defendant CS has a mechanism in place for properly licensing content for its Website

which includes licensing from Getty Images, hiring freelance photographerss to create photographs, and using photographs provided by publicists and talent representatives on its Website. Exhibit 29, ROGS No. 8.

On June 8, 2022, Trunk Archive's Copyright Permissions Manager discovered the Episode VII Photographs being used by Defendant on Defendant's Website www.consequence.net in an article titled "Details for *Star Wars: The Force Awakens* surface in Vanity Fair shoot – watch", written by Michael Roffman ("Force Awakens Article"). Rockwood Decl. ¶6; Exhibit 33; Exhibit 36, Complaint ¶30. On June 8, 2022, Trunk Archive's Copyright Permissions Manager discovered the Episode VIII Photographs being used by Defendant on Defendant's Website www.consequence.net in an article titled "*Star Wars: The Last Jedi* details and photos surface in Vanity Fair cover story", written by Michael Roffman ("Last Jedi Article"). Rockwood Decl. ¶8; Exhibit 34; Exhibit 36, Complaint ¶30. On June 8, 2022, Trunk Archive's Copyright Permissions Manager discovered the Episode IX Photographs being used by Defendants on Defendant's website www.consequence.net in an article titled "*Star Wars: The Rise of Skywalker* Vanity Fair", written by Michael Roffman ("Rise of Skywalker Article"). Rockwood Decl. ¶10; Exhibit 34; Exhibit 36, Complaint ¶30. The Force Awakens Article, the Last Jedi Article, and the Rise of Skywalker Article shall collectively be referred to as the "Infringing Articles".

Michael Roffman ("Roffman") was employed by Defendant Consequence Sound as its Editor-in-Chief from 2008 until 2021. Exhibit 38, RFA #5; Exhibit 39, ROGS No. 4. Roffman, while employed as Editor-in-Chief, wrote the articles "Details for Star Wars: The Force Awakens surface in Vanity Fair shoot – watch", "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", and "Star Wars: The Rise of Skywalker Vanity Fair" which were published on Defendant's Website. Exhibit 39, ROGS No. 3. Roffman selected and published the Star Wars Photographs on Defendant's Website. Exhibit 39, ROGS #9. Roffman did not purchase a license for use of the Star Wars Photographs in the Infringing Articles. Exhibit 39, RFA #11. Defendant CS, via its Editor-in-Chief, downloaded the Star Wars Photographs from Vanity Fair Website. Exhibit 39,

ROGS No. 7; Exhibit 38, RFA #18. Defendant CS did not get permission from Vanity Fair to use the Star Wars Photographs in the Infringing Posts. Exhibit 38, RFA No. 18. Defendant CS did not purchase a license for any of the Stars Wars Photographs. Exhibit 39, ROGS No. 8.

Trunk Archive now moves for summary judgment against Defendant CS for copyright infringement.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings and the evidence demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need only point to the absence of evidence proffered by the non-moving party. *Celotex*, 477 U.S. at 325.

## III. SUMMARY JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT

The sole cause of action alleged against Defendant CS is a cause of action for copyright infringement. To establish a prima facie case of copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

Here, the undisputed facts establish that Trunk Archive, as the exclusive licensor to the Star Wars Photographs, has standing to pursue a claim of copyright infringement against Defendant, that the Star Wars Photographs qualify for the statutory presumption of validity, and that Defendant is liable as direct and vicarious infringer for violation of Trunk Archive's exclusive right to publicly display the Star Wars Photographs.

Thus, summary judgment should be entered in favor of Trunk Archive and against

Defendant.

**A. As The Exclusive Licensor Of The Photographs, Trunk Archive Has Standing To Pursue A Copyright Infringement Claim Against Defendant**

The first element of a copyright infringement case requires a plaintiff to demonstrate ownership of a valid copyright. *Feist Pubs., Inc.*, 499 U.S. at 361. To have standing to bring the infringement claim alleged in the complaint, Trunk Archive must show that it is "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). Pursuant to 17 U.S.C. § 204, "[A] transfer of copyright ownership, other than by operation of law is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.". "Either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in copyright for purpose of the Act." *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (quoting *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015) (holding that Plaintiff has standing to bring an infringement action under the Copyright Act because the Agency Agreements conveyed rights via an "exclusive license")).

It is well settled that "the actual language of the contract is the best evidence of the intent of the parties." *Rose v. M/V "GULF STREAM FALCON"*, 186 F.3d 1345, 1350 (11th Cir. 1999). Under Florida law, when interpreting whether a license granted in writing is exclusive or non-exclusive, the court must interpret the contract "reasonably to give effect to the plain intention of the parties as adduced from the whole agreement, its nature, their situation, and the objects they had in view in making it.", *Applied Concepts Unleashed, Inc. v. Matthews*, 2012 U.S. Dist. LEXIS 195153 (citing *Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc.*, 50 So.2d 120, 122 (Fla. 1951)).

"[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). Further, "where there is no dispute between the copyright owner

and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." *See Imperial Residential Design, Inc. v. Palms Dev. Grp*., Inc., 70 F.3d 96 (*Citing Eden Toys, Inc. v. Florelee Undergarment Co., Inc*., 697 F.2d 27, 36 (2nd Cir.1982)).

Here, Trunk Archive has standing to pursue its infringement claim based on the Artist Agreement it executed with Leibovitz, the creator of the Star Wars Photographs. On or about November 12, 2014, Leibovitz entered into the Artist Agreement with Trunk Archive for exclusive worldwide representation to license her photographs. Exhibit 29. Under the terms of the Artist Agreement, Leibovitz granted Trunk Archive "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media." Exhibit 29, ¶ 1. Because the Artist Agreement provides for Trunk Archive to hold "the *exclusive* worldwide right to license" for images provided under the Artist Agreement, it constitutes a valid transfer of rights pursuant to 17 U.S.C. § 204.

After each of the Star Wars Photographs were first published in Vanity Fair, they were provided to Trunk Archive for licensing under the terms of the Artist Agreement. *See* Exhibit 29, ¶ 2 (The term "Licensed Image" is defined as "images provided to Trunk Archive by Artist or Artist's authorized agent for representation."). Because the Star Wars Photographs are "Licensed Images" as defined in the Artist Agreement, Trunk Archive possesses the exclusive right to license them to third parties and therefore possesses standing to pursue any infringements of the Star Wars Photographs. *See Great Bowery v. Best Little Sites*, No. 2:21-cv- 00567-DBB-JCB, 2023 U.S. Dist. LEXIS 77562, at *25 (D. Utah May 2, 2023) ("Trunk Archive does not assert that it was the original copyright owner of the Subject Images. It asserts instead that Ms. Leibovitz granted it the exclusive right to license the images. As such, Trunk Archive has plausibly pled that it held all six rights under Section 106.").

Further, the clear language of the Artist Agreement whereby Leibovitz granted Trunk the explicit "*exclusive* worldwide right to license, market, and promote, the Licensed Images", indicates that the Parties intended to enter a contract in which Trunk Archive held an exclusive right to Ms. Lebovitz' Star Wars Photographs. Moreover, as the Declarations of both Katrin

Koszta and Annie Leibovitz show, Trunk Archive and Leibovitz maintain that Trunk was granted the exclusive right to license the Star Wars Photographs. Thus, there is no dispute between either Trunk or Leibovitz as to the status of the copyrights.

In conclusion, summary judgment should be entered in favor of Trunk Archive as to the issue of standing.

**B.  The Photographs Qualify for The Statutory Presumption of Validity**

In addition to ownership, the first element of a copyright infringement claim also requires that the copyrights at issue be valid. *Feist Pubs., Inc.*, 499 U.S. at 361. A copyright in a work is valid if the work itself is original. *Id.* at 345 ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. [Citation]. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." [Citation and quotation omitted].).

A certificate of registration validly obtained from the Copyright Office within five years of first publication of a work constitutes *prima facie* evidence of the originality of the work and of the facts stated therein. *See* 17 U.S.C. § 410(c).

Here, each of the Star Wars Photographs was registered with the United States Copyright Office within five years of first publication and therefore qualifies for the statutory presumption of validity.

The Episode VII Photographs were first published by the publication Vanity Fair on May 4, 2015. Leibovitz Decl. ¶41; Exhibit 30. On October 17, 2016, Leibovitz registered the Episode VII Photographs with the U.S. Copyright Office under VA 2-056-929. Leibovitz Decl. 10-12; Exhibit 7. The Episode VIII Photographs were first published by the publication Vanity Fair on May 24, 2017. Leibovitz Decl. ¶45. Exhibit 31. On July 10, 2017, Leibovitz registered the Episode VIII Photographs with the U.S. Copyright Office under VA 2-111-252. Leibovitz Decl. ¶24-26. Exhibit 19. The Episode IX Photographs were first published by the publication Vanity Fair on May 22, 2019. Leibovitz Decl. ¶49; Exhibit 31. On January

16, 2020, Leibovitz registered the Episode IX Photographs with the U.S. Copyright Office under VA 2-192-380. Leibovitz Decl. ¶35-37; Exhibit 28.

Because all of the Star Wars Photographs were registered within five years of first publication and such registration was accepted by the United States Copyright Office, the Star Wars Photographs are presumptively valid, and the first element of Trunk Archive's infringement case is satisfied. *See* 17 U.S.C. § 410(c).

Even if Trunk Archive were not afforded the statutory presumption of validity, the Star Wars Photographs would easily make the grade. Photographs are generally viewed as creative, aesthetic expressions of a scene or image and have long been the subject of copyright. *See* 17 U.S.C. § 102(a)(5) (extending copyright protection to "pictorial, graphic, and sculptural works"); Indeed, the idea that photography is art deserving of copyright protection reflects a longstanding view of Anglo- American law. *See Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921) ("no photograph, however simple, can be unaffected by the personal influence of the author.") (Hand, J.).

In the seminal case affording copyright protection to photographs, the Supreme Court held that a photographic portrait of Oscar Wilde was entitled to copyright protection because of various creative elements employed by the photographer. *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53 (1884); *see also Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir. 2000) (affirming copyrightability of photograph of vodka bottle and noting the "prevailing view" that "almost any[] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' [sic] personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken.").

Here, Trunk Archive has submitted copies of the Star Wars Photographs as part of the record. *See* Exhibits 1-27. It is clear that Leibovitz, one of the world's best known and most accomplished portrait photographers, imbued the Star Wars Photographs with numerous elements of creativity such that they meet the relatively low bar of originality. *Ibid.*

Thus, Trunk Archive has established that the Star Wars Photographs are valid for

purposes of the first element of Trunk Archive's copyright infringement claim and summary judgment should be entered in Trunk Archive's favor.

### C. Defendants Are Liable for Violation Of The Display Right and the Right to Reproduce the Star Wars Photographs

As to the second element of copyright infringement, the term copying "is a shorthand reference for the act of infringing any of the copyright owner's exclusive rights set forth in 17 U.S.C. § 106, which include the right to 'display' the copyrighted work publicly." *Paramount Pictures Corp. v. Video Broad. Sys., Inc.*, 724 F. Supp. 808, 819 (D. Kan. 1989); *see also* 17 U.S.C. § 106(5). In addition to the public display right, a separate actionable right is the right of the copyright holder to reproduce the copyrighted work. 17 U.S.C. § 106(1).

Copyright infringement is a strict-liability cause of action; a defendant may be held liable for the tort even absent an intent to infringe. *Millennium Funding, Inc. v. Priv. Internet Access, Inc.*, 2022 U.S. Dist. LEXIS 187487, \*23, 2022 WL 7560395 (D. Col., Oct. 13, 2022) citing *UMGRecordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006);*see also Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) ("All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers.").

Here, Defendant CS is liable as a direct infringer because the Star Wars Photographs were published in the Infringing Articles by Defendant CS's editor-in-chief, Michael Roffman and Defendant CS grants its editors authority to select, create, review, and publish content to the Website. Additionally, Defendant CS is liable as a vicarious infringer because they had the ability to supervise and control the infringing acts and financially benefited from it.

### i. Defendant is Liable For Copyright Infringement as a Direct Infringer.

"Where a plaintiff shows that he owns a valid copyright and that the other party copied some of the protected elements of that work, he has shown direct infringement of

his copyright." *See Disney Enters. v. Hotfile Corp.*, 798 F. Supp. 2d 1303; *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). "Copyright infringement is a strict liability offense, meaning the '[t]he copyright owner need not prove any knowledge [*16] or intent on the part of the [d]efendant to establish liability for copyright infringement.'" *Joe Hand Promotions, Inc. v. Phillips*, No. 19-21723-CIV, 2020 U.S. Dist. LEXIS 107981, 2020 WL 3404964, at *2 (S.D. Fla. June 19, 2020) (quoting *Playboy Enters. v. Starware Publishing Corp.*, 900 F. Supp. 433, 436 (S.D. Fla. 1995)) (emphasis in original).

Two of the exclusive rights possessed by Trunk Archive is right to publicly display the Star Wars Photographs and the right to reproduce the Star Wars Photographs. 17 U.S.C. § 106(5) (exclusive right to publicly display); 17 U.S.C. § 106(1) (exclusive right to reproduce). "To 'display' a work means to show a copy of it, either directly or by … any other device or process." 17 U.S.C. § 101. At issue in this case are three Infringing Articles that featured and displayed the thirty-one Star Wars Photographs. Exhibit 33; Exhibit 34; Exhibit 35. The Infringing Articles were authored by Michael Roffman, who acted as Defendant CS' Editor-in-Chief from 2008 until 2021. Exhibit 39, ROGS No. 4; Exhibit 38, RFA No. 5.

Here, it is not disputed that Defendant CS displayed or reproduced the Star Wars Photographs. Therefore, "the fact finder need not make any subjective determinations regarding the similarity between two works to establish the second element of a copyright infringement claim, copying of constituent elements of the work that are original". *Umg Recordings, Inc. v. Vital Pharms., Inc.*, 2022 U.S. Dist. LEXIS 122046 (S.D.Fla. 2022)(citing, *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 761 (W.D. Tex. 2019) (holding that "a side-by-side comparison might be probative" where plaintiffs allege that their copyrights were infringed by the creation of substantially similar, but not identical, derivative works, which might raise a question of substantial similarity," but is not required where the plaintiffs are instead asserting that their copyrights were infringed by distribution of exact copies of their works). Comparing the Star Wars Photographs in Exhibits 1-27 directly to the photographs as they appeared in the Infringing Articles in Exhibits 33-35, the photographs featured in the Infringing Articles are direct

copies of the Star Wars Photographs at issue in this claim. Moreover, Defendant CS Defendant CS admits that the Star Wars Photographs were copied by Roffman directly from the Vanity Fair website. Exhibit 39, ROGS No. 7; Exhibit 38, RFA No.13. Finally, Trunk Archive did not grant authorization or a license for Defendant CS or its employee for use of the Star Wars Photographs. Rockwood Decl. ¶30; Exhibit 36, Complaint ¶32.

Therefore, Defendant CS, is liable for direct infringement of the Star Wars Photographs. These unauthorized acts violated Trunk Archive's exclusive right to publicly display the Star Wars Photographs. *See* 17 U.S.C. § 106(5). These unauthorized acts violated Trunk Archive's exclusive right to reproduce the Star Wars Photographs. *See* 17 U.S.C. § 106(1). Without Defendant CS' affirmative acts of displaying the Star Wars Photograph on the Website, no infringement would have occurred. As such, Trunk Archive has satisfied the second "copying" element of the infringement case. Therefore, Trunk Archive should be granted summary judgment as to the second element of copyright infringement.

### ii. Defendant CS is Liable for Copyright Infringement as A Vicarious Infringer

Vicarious liability attaches when the defendant has the right and ability to supervise the infringing activity and has a direct financial interest in such activities, even if he or she is not aware of the infringing activity. *Diversey v. Schmidly*, 738 F.3d 1196, 1204(10th Cir. 2013); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, n.9 (2005). When assessing vicarious liability, it does not matter whether the underlying direct infringer is an employee or an independent contractor. *See Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). (A "proprietor [is] liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhances income. *He is liable whether the band is considered, as a technical matter an employee, or an independent contractor.*" [emphasis added]).

Thus, the imposition of vicarious liability "even in the absence of an intention to

infringe or knowledge of infringement, is not unusual. *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 308 (2nd Cir. 1963) (citations omitted); *Broad. Music, Inc. v. Carey-On Saloon, LLC*, 2014 U.S. Dist. LEXIS 16312, *13-14 (D. Col., Feb. 7, 2014) ("Vicarious liability may also be found even when the defendant lacks knowledge of the copyrighted compositions to be played or any control over their selection by the direct infringer, [cite] lacks any intention to infringe, [cite] or instructs the performers to perform no infringing material.").

Here, Defendant CS satisfies both prongs of vicarious liability. As to the direct financial interest prong of establishing vicarious liability, Defendant CS admits that they receive advertising revenue from ads placed on the Website. Exhibit 39, RFA No. 14. Defendant CS also generates revenue for the Website from live events, sponsorship, and performance marketing. Exhibit 38, ROGS No. 12. Further, Defendant CS admits that their primary purpose of ownership of the Website is to gain financial return. Exhibit 39, RFA No. 17.

In *Fonovisa,* the Ninth Circuit held that it was not necessary to require a direct tie between the vicarious infringer's financial benefit and the infringing activity. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). Instead, the Ninth Circuit held that a financial benefit exists where the availability of infringing material "acts as a 'draw' for customers." *Id.* at 263. *See Playboy II*, 968 F. Supp. at 1177 (N.D. Tex. 1997)("[P]laintiff's photographs enhanced the attractiveness of the Neptics website to potential customers. Accordingly, the court finds that the financial interest of Messrs. Ives and Ellis in Neptics' infringing activity was sufficiently direct to support plaintiff's vicarious infringement claim.).

Here, Defendant CS allows editors to choose content for the Website based on "newsworthiness". Exhibit 39, ROGS No. 14. Vanity Fair published the Star Wars Photographs as an "exclusive" presumably because there was a high demand for content related to the release of the Star Wars sequels. Defendant CS' editor published all 31 of the Star Wars Photographs in order to "draw" in visitors to the Website. The title of each of the Infringing Articles specifically invites users to look at the Star Wars Photographs on

Defendant CS' Website: "Details for Star Wars: The Force Awakens surface in Vanity Fair shoot – watch"; "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story"; "Star Wars: The Rise of Skywalker Vanity Fair details and photos in new Vanity Fair cover story". There is no question that the Star Wars Photographs in the Infringing Articles are meant to "draw" the user/reader in.

Therefore, Trunk Archive should be granted summary judgment as to the first prong of vicarious liability for copyright infringement.

Vicarious infringement also requires that the infringer have the "right and ability to supervise a party responsible for direct infringement." *Latele Television, C.A. v. Telemundo Commc'ns Grp.*, LLC, No. 12-22539-CIV, 2014 U.S. Dist. LEXIS 174887, 2014 WL 7272974, at *5 (S.D. Fla. Dec. 18, 2014) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("[T]o succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement.... [T]he 'control' element [is satisfied by a plaintiff showing that] a defendant ... has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.").

As explained in Section 1.C, *supra*, Defendant CS authorizes its editors to select, create, review, and publish content to the Website. Exhibit 39, ROGS Nos. 5, 10, 14. Moreover, Defendant CS authorizes its editors to select content based on 'newsworthiness'. *Id* at No. 14. Defendant CS identifies that Michael Roffman, who was employed as their editor-in-chief at the time the Infringing Articles were published, selected and published the Star Wars Photographs to Defendant's Website. Exhibit 38, ROGS No. 9. Defendant CS admits that the Star Wars Photographs were copied by Roffman directly from the Vanity Fair website. Exhibit 39, ROGS No. 7; Exhibit 38, RFA No.13. Therefore, Defendant CS authorized Roffman via his position as an editor to upload the Star Wars Photographs to the Website in the Infringing Articles.

Defendant CS admits that Michael Roffman did not purchase a license for use of the Star Wars Photographs. Exhibit 39 RFA No. 11. Defendant CS identifies that

Defendant CS did not purchase a license for the Star Wars Photographs. Exhibit 38; ROGS No. 8. Defendant CS Defendant CS admits that they did not get permission from Vanity Fair to use the Star Wars Photographs in the Infringing Articles. Exhibit 38, RFA No. 18. Finally, Trunk Archive did not grant authorization or a license for Defendant CS or its employee for use of the Star Wars Photographs. Rockwood Decl. ¶30; Exhibit 36, Complaint ¶32.

Defendant CS, as Roffman's employer, are liable for acts taken in the scope of his employment – including copyright infringement. *Southern Mississippi Planning & Dev. Dist.*, Inc. v. Robertson, 660 F. Supp. 1057, 1062 (S.D. Miss. 1986) (holding "[T]he doctrine of respondeat superior applies to copyright infringement by the servant acting within the scope of his employment."). Without Roffman's affirmative act of copying the Star Wars Photographs from the Vanity Fair website and uploading the Star Wars Photographs on the Website with the Infringing Articles, no infringement would have occurred as the Star Wars Photograph would not have been reproduced or publicly displayed.

Here, Defendant CS, by their own admission, has the right and ability to control the Website. Exhibit 38, RFA No. 2. Defendant CS has the right to review any content that appears on the Website. *Id* at No. 2. Moreover, as Roffman's employer, Defendant CS absolutely had a legal right to exercise control over Roffman's work-related activities, including stopping any infringing conduct. Further, Defendant CS has authored content that appears on the Website indicating that they at any time could have removed the content from the Website and did direct an employee to remove the Star Wars Photographs when they were notified of the unauthorized use of the Star Wars Photographs. Exhibit 38, ROGS No. 8. Finally, Defendant CS licenses photographs from Getty Images, hires freelance photographers to create photographs, and uses photographs provided by publicists and talent representatives on its Website. Exhibit 39, ROGS #6. Despite having licensing mechanisms in place, Defendant CS did not stop or limit the infringing conduct by seeking valid licenses from any of its pre-existing sources.

Whether or not Defendant CS chose to affirmatively exercise their right to supervise

or control the content of the Website is irrelevant; it only matters that such a right exists. See *Playboy Enters., Inc. v. Webbworld Inc*., 991 F. Supp. 543, 554 (N.D. Tex. 1997) ("The reluctance of Ives to exercise his authority is not determinative of the issue. Courts that have examined the issue of vicarious liability have focused not on actual exercise of control but rather on the 'right and ability' to exercise control*."); Red Giant, Inc. v. Molzan, Inc.,* 2009 U.S. Dist. LEXIS 63990, at *20 (S.D. Tex. July 24, 2009) ("[I]t follows that Defendant Bruce had the right and ability to control the infringing activities at the Piano Room, regardless of whether or not he chose to exercise that right").

Thus, Defendant CS has complete editorial control over the Website, including the ability to control the Website, review any content that appears on the Website, publish content to the Website, and remove any content that appears on the Website, the undisputed evidence demonstrates that Defendant CS has satisfied by the second prong of the vicarious liability analysis.

In conclusion, because Defendant CS received a direct financial benefit from the use of the Star Wars Photographs on the Website and Defendant CS has the right and ability to review and supervise any content on the Website, Trunk Archive has established that Defendant CS is a vicarious infringer, and summary judgment should be granted in favor of Trunk Archive.

## IV.    DEFENDANTS AFFIRMATIVE DEFENSES ALSO FAIL

### A.  Failure to State A Claim

As a first affirmative defense, Defendant CS contends that Trunk Archive has failed to state a claim. As demonstrated in Section III above, Trunk Archive has stated a claim for copyright infringement against defendant.

As such, summary judgment should be entered in favor of Trunk Archive.

### B.  Fair Use

As its second affirmative defense, Defendant CS contends that Trunk Archive's claim is barred by the doctrine of fair use.

The Copyright Act lists four factors non-exclusive factors that a court must weigh

when determining whether a use is fair: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107.

Here, all four factors weigh against a finding of fair use.

### i. The Purpose And Character Of The Use Weighs Against A Finding of Fair Use

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." §107(1). This factor considers the reasons for, and nature of, the copier's use of an original work. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1274 (2023).

The "central" question it asks is "whether the new work merely 'supersede[s] the objects' of the original creation . . . ('supplanting' the original), or instead adds something new, with a further purpose or different character." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, (1994). In that way, the first factor relates to the problem of substitution—copyright's bête noire. *Goldsmith*, 143 S. Ct. at 1274. The use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or supplant the work. *Ibid.*

Commercial use is an important consideration in the first fair use factor, and a profit motivation may weigh heavily against fair use. *See Harper & Row*, 471 U.S. at 562 (explaining that even straight reporting may, in some cases, be "commercial" for purposes of this factor); *see also* 4 *Nimmer & Nimmer*, § 13.05[A][1][c], at 13-167 (noting that "[e]ven if the defendant's purpose in copying is news reporting -- one of the characteristically fair purposes set forth in the preamble to Section 107 -- its profit motivation may negate the fairness of its use under this factor.")

Applying those standards here, the first factor cuts strongly against a finding of fair use. Defendant CS clearly sought to use the Star Wars Photographs to monetize the

Website. Defendant CS has admitted that the primary purpose of ownership of the Website is to gain financial return. Exhibit 38, RFA No. 17. Further, Defendant CS indicates that the Website generates revenue for Defendant from advertising, live events, sponsorship, and performance marketing. Exhibit 39, ROGS No. 12.

Additionally, the use of the Star Wars Photographs was not transformative in any material way. To the contrary, The Star Wars Photographs were used solely "for illustrative purposes without adding new information, new aesthetics, new insights and new understandings." *Otto v. Hearst Communs., Inc.,* 345 F. Supp. 3d 412, 428 (S.D.N.Y. 2018) ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use"); *see also Fox News Network, LLC v. TVEyes, Inc.,* 883 F.3d 169, 177 (2d Cir. 2018) ("[A] use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use." (quotation omitted)). It is plain from the contents of the Infringing Article that the purpose of the Infringing Article was to merely regurgitate the Star Wars Photographs from the Vanity Fair website where they were originally published on to Defendant's Website in their entirety.

To nonetheless find that the use of the Star Wars Photographs were fair would "eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law." *Barcroft Media, Ltd. v. Coed Media Grp., LLC,* 297 F. Supp. 3d 339, 352 (S.D.N.Y. 2017) .

Thus, the first factor weighs against a finding of fair use.

### ii.     The Nature of the Copyrighted Work Weights Against A Finding of Fair Use

The second factor considers "the nature of the copyrighted work." In so doing, the court may consider, among other things, whether the work was creative, imaginative, and original, . . . and whether it represented a substantial investment of time and labor made in anticipation of financial return. *Pro Arts, Inc. v. Hustler Magazine, Inc.* 787 F.2d

592 (6th Cir. 1986) (quotation omitted).

The Star Wars Photographs are clearly subject to protectable copyright. *See* 17 U.S.C. § 102(a)(5). Leibovitz is one of the most accomplished photographers of all time. It would defy reason to suggest that her works, including the Star Wars Photographs were not highly creative in nature. Additionally, it is clear that Leibovitz and Trunk Archive expect to reap a financial return from licensing such sought after works to various publications. Indeed, "visual works are created, and sold or licensed, usually for repetitive viewing." *Ringgold v. Black Entm't TV, Inc.,* 126 F.3d 70, 79 (2d Cir. 1997).

Thus, the second factor weighs against a finding of fair use.

### iii.     The Amount and Substantiality Of The Portions Used Weighs Against A Finding Of Fair Use

The third fair use factor directs courts to examine the amount and substantiality of the portion used in relation to the copyrighted work as a whole. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 471 U.S. 539, 565 (1985) ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate"). Generally speaking, "the more of a copyrighted work that is taken, the less likely the use is to be fair." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998).

Here, it is undisputed that complete versions of the Star Wars Photographs were displayed on the Website. See *Bill Graham Archives v. Dorling Kindersley Ltd*., 448 F.3d 605, 613 (2d Cir. 2006) ("Neither our court nor any of our sister circuits has ever ruled that copying of an entire work favors fair use."). Moreover, the case at hand revolves around Defendant's use of ***thirty-one*** copyright protected photographs, a number that in and of itself should favor Plaintiff in a fair use argument.

Thus, the third factor weighs against a finding of fair use.

### iv. The Effect On The Market Place Weights Against A Finding Of Fair Use

The final factor — "the effect of the use upon the potential market for or value of the copyrighted work" — looks "to not only the market harm caused by the particular infringement, but also to whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Bill Graham Archives*, 448 F.3d at 613; *see also Harper & Row*, 471 U.S. at 568 ("[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." (internal quotation marks omitted)).

This factor "is undoubtedly the single most important element of fair use," because "[f]air use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." *Id.* at 566-67; *see also* S. Rep. No. 94-473 (1975) ("[A] use that supplants any part of the normal market for a copyrighted work would ordinarily be considered an infringement.").

Here, Trunk Archive's business depends on its ability to convince publications to pay a licensing fee to use its photographs. Because the Star Wars Photographs were used for the very purpose for which they was originally intended, its use necessarily "usurp[ed]" the function of the original works in the market. *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013). Specifically, Defendant CS took the Star Wars Photographs directly from Vanity Fair's website and published them in the Infringing Articles which clearly replicated Vanity Fair's initial usage of the Star Wars Photographs.

Moreover, if this practice of Internet publications using photographs without licensing were to become widespread, it is intuitive that the market for such images would diminish correspondingly: If entertainment websites could use such images for free, there would be little or no reason to pay for a license to Trunk Archive.

MOTION FOR SUMMARY JUDGMENT

In conclusion, all four of the fair use factors weigh against a finding of fair use. Thus, summary judgment should be entered in favor of Trunk Archive

## V.  TRUNK ARCHIVE IS ENTITLED TO SEEK STATUTORY DAMAGES AS TO THE EPISODE VIII PHOTOGRAPHS

Trunk Archive is also entitled to summary judgment that it is eligible to pursue statutory damages for some of the infringements. Under the Copyright Act, an infringement is eligible for statutory damages if the work at issue is registered within three months of first publication or if the infringement occurred after registration has been made. 17 U.S.C. § 412(2).

The Episode VIII Photographs were first published in the 2017 Vanity Fair Article on or about May 24, 2017. Exhibit 31. Leibovitz registered the Episode VII Photographs as part of a group registration of photographs under registration certificate VA 2-111-252 with an effective registration date of July 10, 2017, which is less than three months from first publication. Exhibit 19. Because these images are timely registered, Trunk Archive is entitled to summary judgment that is eligible to recover statutory damages for the infringements of the Episode VII Photographs as follows:

- One award of statutory damages against Defendant CS for the infringement of the Empire Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 8; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the Holdo Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 9; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the Rey and Chewy Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 10; Exhibit 34.

- One award of statutory damages against Defendant CS for the

infringement of the Red Lightsaber Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 11; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the BB-8 Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 12; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the Connix Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 13; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the Skywalker Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 14; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the first Canto Bright Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 15; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the second Canto Bright Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 15; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the DJ Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 16; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the Blue Lightsaber Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 17; Exhibit 34

- One award of statutory damages against Defendant CS for the infringement of the first Last Jedi Production Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 18; Exhibit 34.

- One award of statutory damages against Defendant CS for the infringement of the second Last Jedi Production Photograph in the article titled: "Star Wars: The Last Jedi details and photos surface in Vanity Fair cover story", written by Michael Roffman. Exhibit 18. Exhibit 34.

## VI.    CONCLUSION

In conclusion, Plaintiff Great Bowery Inc. d/b/a Trunk Archive respectfully requests that the Court enter summary judgment in its favor.

DATED: May 10, 2024                                Respectfully submitted,

**s/ Taryn Rose Murray**
Taryn Rose Murray, Esq.
*Admitted Pro Hac Vice*
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*


**/s/ Melissa A. Higbee**
Melissa A. Higbee, Esq.
State Bar No. 62465
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that Plaintiff's Motion For Summary Judgment has been served on all parties who have appeared in this case by using the Court's CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record listed with the Clerk of the Court.

*/s/ Taryn R. Murray*
Taryn R. Murray