UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-cv-80488-RLR

GREAT BOWERY INC.,

    Plaintiff,

v.

CONSEQUENCE SOUND LLC, and
CONSEQUENCE MEDIA GROUP,

    Defendants.

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendants Consequence Sound LLC and Consequence Media Group (collectively referred to herein as "Defendants"), submit the following statement of material facts and aver that there is no genuine issue with respect to these facts such that the Court should grant Defendants' motion for summary judgment in its entirety.

**Copyright Registrations**

1. Copyright Registration No. VA 2-056-929 cited in paragraph 16 of Plaintiff's Complaint, identifies Annie Leibovitz as the author and claimant of the works protected by the registration, which are titled *Vanity Fair, 2015*. (Duff Decl. ¶ 3, Ex. A, at 4-6.)

2. Copyright Registration No. VA 2-111-252 cited in paragraph 20 of Plaintiff's Complaint, identifies Annie Leibovitz as the author and claimant of the works protected by the registration, which are titled *Vanity Fair, 2017 (Part 1)*. (Duff Decl. ¶ 4, Ex. B, at 2-4.)

1

3. Copyright Registration No. VA 2-192-380 cited in paragraph 24 of Plaintiff's Complaint, identifies Annie Leibovitz as the author and claimant of the works protected by the registration, which are titled *Vanity Fair, 2019*. (Duff Decl. ¶ 5, Ex. C, at 2-3.)

4. Plaintiff Great Bowery Inc. is not mentioned in any of the copyright registrations cited in Plaintiff's Complaint. (Duff Decl. ¶¶ 3-5, Ex. A, at 4-6, Ex. B, at 2-4, Ex. C, at 2-3.)

5. Each of the 31 photographs identified in the Complaint (the "Images") were created pursuant to an agreement between Condé Nast and AL Studio, LLC ("AL Studio") (the "Condé Agreements"). (Duff Decl. ¶¶ 7, 8, 12, Ex. E, at 2, Ex. F, at 2, Ex. J, at 6, 7.)

6. Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by" AL Studio. (Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.)

### Defendants' Purported Copyright Transfer Documents

7. Defendants' Request for Production No. 14 to Plaintiff sought "[a]ll communications between You, *Vanity Fair*, Conde [sic] Nast, and/or Annie Leibovitz concerning any photographs taken by Leibovitz." (Duff Decl. ¶ 11, Ex. I, at 7.)

8. Defendants' Request for Production No. 15 to Plaintiff sought "[a]ll written agreements concerning any of the photographs identified as the Star Wars Photographs in paragraph 26 of the Complaint." (Duff Decl. ¶ 11, Ex. I, at 7.)

9. In response to Defendants' Request for Production No. 17 to Plaintiff seeking "[a]ll documents and communications not otherwise produced that support Your claim for copyright infringement made in the Complaint[,]" Plaintiff stated that it "has produced all such documents through their production." (Duff Decl. ¶ 12, Ex. J, at 19, 20.)

2

10. During the discovery period, Plaintiff produced an agreement dated November 12, 2014, captioned as an artist agreement, and signed by one unknown third-party ("Artist Agreement"). (Duff Decl. ¶ 13, Ex. K, at 2.)

11. During the discovery period, Plaintiff produced letter addressed "To Whom It May Concern" dated June 12, 2018 and signed by Annie Leibovitz ("Authorization Letter"). (Duff Decl. ¶ 14, Ex. L, at 2.)

12. The Authorization Letter does not identify any of the copyrighted works referenced therein. (Duff Decl. ¶ 14, Ex. L, at 2.)

13. Defendants' Interrogatory No. 2 to Plaintiff asked Plaintiff to "[d]escribe in detail how You acquired the rights You assert in the photographs taken by Annie Leibovitz that are referenced in the Complaint." (Duff Decl. ¶ 12, Ex. J, at 6.)

14. Plaintiff's response to Defendants' Interrogatory No. 2 identifies the Artist Agreement. (Duff Decl. ¶ 12, Ex. J, at 6.)

15. The Artist Agreement is not signed by Plaintiff or Leibovitz. (Duff Decl. ¶ 13, Ex. K, at 2.)

16. Nothing in the record indicates that the person who signed the Artist Agreement did so as Annie Leibovitz's duly authorized agent. (Duff Decl. ¶ 15.)

**Plaintiff's Case in the District of Oregon**

17. On January 2, 2020, Plaintiff filed a complaint asserting a claim for copyright infringement against a defendant in the District of Oregon (the "Oregon Action"). (Duff Decl. ¶ 16, Ex. M, at 6-7; Compl. at 5-7, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK (D. Or. Jan. 2, 2020), ECF No. 1.)

18. Plaintiff's complaint in the Oregon Action alleged that the defendant infringed upon the copyright in two photographs taken by Leibovitz for the June 2015 issue of *Vanity Fair Magazine*. (Duff Decl. ¶ 16, Ex. M, at 5-8; Compl. at 5-7, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK (D. Or. Jan. 2, 2020), ECF No. 1.)

19. Plaintiff produced the Authorization Letter, the Artist Agreement, and an agreement between Condé Nast and AL Studio dated January 1, 2015 in the Oregon Action. (Duff Decl. ¶ 17; Decl. Jonathan M. Hood at 2, 36, 62-78, 80, 81, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK (D. Or. Feb. 5, 2021), ECF No. 17.)

20. In response to a Request for Admission from Defendants, Plaintiff admitted that the Condé Agreement dated January 1, 2015 and produced by Plaintiff in the Oregon Action is "genuine, authentic, true, and accurate." (Duff Decl. ¶ 12, Ex. J, at 27.)

### The Condé Agreements

21. On March 8, 2024, Defendants served a subpoena on Advance Magazine Publishers Inc., which operates as Condé Nast, requesting, in part, "[a]ll agreement between You and the photograph [sic] Annie Leibovitz from January 1, 2015 to the present." (Duff Decl. ¶ 6, Ex. D, at 8.)

22. Condé Nast produced an agreement with AL Studio dated January 1, 2015 under which Leibovitz created photographs for *Vanity Fair* magazine from January 1, 2015 through March 31, 2018. (Duff Decl. ¶ 7, Ex. E, at 2.)

23. Condé Nast produced an agreement with AL Studio dated April 1, 2018 under which Leibovitz created photographs for *Vanity Fair* magazine from April 1, 2018 through March 31, 2021. (Duff Decl. ¶ 8, Ex. F, at 2.)

24. Condé Nast produced an agreement with AL Studio dated July 7, 2021 under which Leibovitz created photographs for *Vanity Fair* magazine from April 1, 2021 through March 31, 2023. (Duff Decl. ¶ 9, Ex. G, at 2.)

25. Condé Nast produced an agreement with AL Studio dated November 17, 2022 under which Leibovitz created photographs for *Vanity Fair* magazine from November 1, 2022 through April 30, 2024. (Duff Decl. ¶ 10, Ex. H, at 2.)

26. Each of the Images at issue in this lawsuit was created pursuant to one of the Condé Agreements. (Duff Decl. ¶¶ 7, 8, 12, Ex. E, at 2, Ex. F, at 2, Ex. J, at 6, 7.)

27. Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by" AL Studio. (Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.)

28. Nothing in the record shows a documented transfer of any rights in the Images from AL Studio to Leibovitz or Great Bowery. (Duff Decl. ¶ 18.)

29. Each of the Condé Agreements grants Condé Nast certain exclusive rights in the Images for a period of time as well as nonexclusive rights in each Image for the duration of the copyright. (Duff Decl. ¶¶ 7-10, Ex. E, at 2, 6-12, Ex. F, at 2, 5-11, Ex. G, at 2, 5-11, Ex. H, at 2, 5-11.)

30. Each of the Condé Agreements states that AL Studio "will not allow any of the [Images] that are Published in a Publication, or any Works similar to such [Images], to be used for any commercial, merchandising, or advertising purpose . . . unless [AL Studio] first obtains [Condé Nast's] written consent, which [Condé Nast] may withhold in its sole discretion. This requirement will continue to apply . . . as long as [AL Studio] and [Condé Nast] still have a professional contractual relationship." (Duff Decl. ¶¶ 7-10, Ex. E, at 13, Ex. F, at 12, 13, Ex. G, at 13, Ex. H, at 12, 13.)

5

31. Each Condé Agreement states that AL Studio "grants [Condé Nast], for the full term of copyright, the non-exclusive right to Publish, print, re-Publish, and reprint the [Images] (including in anthologies as permitted below), the unrestricted right to use any cover containing any [Image](s) as a cover (i.e., in the original cover layout) for any purpose at any time, the right to make and authorize the making of reprints or stand-alone copies of the article feature including any [Image](s) for any purpose, the right to authorize the use of any [Image](s) in the original layout shown in the applicable Publication as set dressing or props in movies, television shows, and other productions, and in addition, the right to use any [Image](s) . . . in Publishing, promoting, advertising and publicizing the Publication(s) in which the [Image](s) appear." (Duff Decl. ¶¶ 7-10, Ex. E, at 10, Ex. F, at 10, Ex. G, at 10, Ex. H, at 9, 10.)

32. Plaintiff did not produce any communications showing that Leibovitz provided any Images to Plaintiff. (Decl. ¶ 19.)

Date:  New York, New York
       May 10, 2024

Respectfully submitted,

By:   /C. Cory Mauro/
      C. Cory Mauro
      Florida Bar No. 384739
      MAURO LAW P.A.
      1001 Yamato Road, Suite 401
      Boca Raton, Florida 33431
      (t) 561.202.1992
      (e) cory@maurolawfirm.com
      (e) service@maurolawfirm.com

      Anderson J. Duff (*pro hac vice*)
      DUFF LAW PLLC
      353 Ocean Ave. Ste. 4E
      Brooklyn, New York 11226
      (t) 646.450.3607
      (e) ajd@hoganduff.com

*Attorneys for Defendants*
*Consequence Sound LLC and*
*Consequence Media Group*