UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:23-cv-80488-RLR

|  |  |
|---|---|
| GREAT BOWERY INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CONSEQUENCE SOUND LLC, and CONSEQUENCE MEDIA GROUP, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT** ................................................................................................................ 1
**STATEMENT OF FACTS** ....................................................................................................................... 1
**ARGUMENT** ............................................................................................................................................ 1
    I.    THE ARTIST AGREEMENT DOES NOT CONFER STANDING ON PLAINTIFF ............................................ 4
    II.   THE § 106 RIGHTS PLAINTIFF ASSERTS ARE INFRINGED ARE NOT THE RIGHTS GRANTED TO PLAINTIFF IN THE ARTIST'S AGREEMENT ................................................................................................................................. 9
    III.  AL STUDIO'S AGREEMENTS WITH CONDÉ NAST PREVENT PLAINTIFF FROM RECEIVING AN EXCLUSIVE LICENSE OF ANY § 106 RIGHTS IN THE IMAGES ................................................................................................................. 10
    IV.  CONSIDERING SUBSTANTIALLY SIMILAR FACTS, THE DISTRICT OF OREGON HELD THAT PLAINTIFF LACKED STANDING TO BRING A COPYRIGHT INFRINGEMENT LAWSUIT .................................................................................. 11
**CONCLUSION** ..................................................................................................................................... **12**

CASES

*Creative Photographers, Inc. v. Julie Torres Art, LLC*, 1:22-CV-00655-JPB, 2023 WL 2482962, at *6 (N.D. Ga. Mar. 13, 2023) ................................................................................................................................. 2, 5, 6
*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ........................................ 7
*Great Bowery v. Best Little Sites*, 671 F.Supp.3d 1297, 1311 (D. Utah 2023) ................................................... 8
*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 770 F.3d 96, 99 (11th Cir. 1995) ...................... 7, 8
*Lorentz v. Sunshine Health Prods., Inc.*, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010) ......................... 3
*Minden Pictures, Inc. v. John Wiley && Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) ........................................ 6, 7
*Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F.Supp. 1564 (N.D. Ga. 1987) .......... 5, 9
*Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir.1969) .............................................................. 3
*Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F.Supp.3d 1356, 1369 (S.D. Fla. 2015) ........................... 2, 3
*Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir.2011) ...................................................... 2
*Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 12-cv-00668, 2015 WL 585806, at *1 (D. Colo. Feb. 11, 2015) ................................................................................................................. 2, 5
*World Thrust Films Inc. v. Int'l Family Entm't Inc.*, No. 93-0681-CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996) ............................................................................................................................................. 3

STATUTES

17 U.S.C. § 204(a) ......................................................................................................................................... 7, 8
17 U.S.C. § 106 ........................................................................................................................................ passim
17 U.S.C. § 501(b) ............................................................................................................................................ 2

## PRELIMINARY STATEMENT

Defendants Consequence Sound LLC and Consequence Media Group (referred to collectively herein as "Defendants" or "Consequence"), by and through their attorneys, Duff Law PLLC, hereby oppose Plaintiff Great Bowery Inc.'s motion for summary judgment, ECF No. 31, against Defendant Consequence Sound LLC and request dismissal of Plaintiff's claim with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

## STATEMENT OF FACTS

Defendants respectfully refer the Court to Defendants' Counterstatement of Material Facts (referred to herein as "CMF"), filed pursuant to Local Rule 56.1, and the declarations and exhibits attached thereto, for a full recitation of the facts relevant to the determination of Defendants' Motion for Summary Judgment. (CMF, ECF No. ___.) Defendants' Statement of Material Facts in support of their motion for summary judgment is referred to herein as "SMF." (SMF, ECF No. 33-1.)

## ARGUMENT

Plaintiff incorrectly argues that a written agreement granting it a purportedly exclusive license *to license* rights held by a third party give Plaintiff standing to bring this action. The Copyright Act requires that a plaintiff be the exclusive owner of one of the six copyright rights identified in § 106 of the Copyright Act. Plaintiff implicitly acknowledges that a copyright infringement claim must be based on one of the six § 106 copyright rights by asserting that Defendant Consequence Sound infringed upon the rights to distribute and display the photographs in question (the "Images"). Plaintiff does not argue that Defendants infringed upon Plaintiff's right "to license" the Images, because the Copyright Act does not allow such a claim. Because Plaintiff relies entirely on an agreement that grants Plaintiff only the right "to license"

1

the Images, Plaintiff does not have standing to bring this lawsuit. Plaintiff is Annie Leibovitz's agent not the owner of any exclusive copyright rights in Leibovitz's photographs.

"Under the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' may 'institute an action for any infringement of that particular right while he or she is the owner of it.'" *Pro. LED Lighting, Ltd. v. AAdyn Tech., LLC*, 88 F.Supp.3d 1356, 1369 (S.D. Fla. 2015) (quoting 17 U.S.C. § 501(b)) (citation omitted); *see also Creative Photographers, Inc. v. Julie Torres Art, LLC*, 1:22-CV-00655-JPB, 2023 WL 2482962, at *6 (N.D. Ga. Mar. 13, 2023) (citing *Viesti Assocs., Inc. v. McGraw-Hill Glob. Educ. Holdings, LLC*, No. 12-cv-00668, 2015 WL 585806, at *1 (D. Colo. Feb. 11, 2015)). "Accordingly, 'only the legal or beneficial owner of an "exclusive right" has standing to bring a copyright infringement action' under the Copyright Act." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (quoting *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir. 2011)); *see also Creative Photographers*, 2023 WL 2482962, at *3 (citation omitted). The Copyright Act identifies six "exclusive rights" provided by a copyright, namely, the rights to:

> (1) reproduce the copyrighted work;
>
> (2) prepare derivative works based on the copyrighted work;
>
> (3) distribute copies or phonorecords of the copyrighted work;
>
> (4) perform the copyrighted work publicly;
>
> (5) display the copyrighted work publicly; and
>
> (6) perform the copyrighted work publicly.

17 U.S.C. § 106. Plaintiff must demonstrate that it is the legal or beneficial owner of one of these rights to have standing to bring this action.

Each of the three federal copyright registrations cited in the Complaint identifies Annie Leibovitz as the author and claimant of the copyright in the Images. (SMF ¶¶ 1-3; Compl., ECF No. 1, at ¶¶ 16, 20, 24.) Plaintiff is not mentioned in any of the copyright registrations cited in the Complaint. (SMF ¶ 4.) Throughout the Complaint, Plaintiff refers to the Images as "Leibovitz' photographs" that "Leibovitz registered" with the Copyright Office. (Pl.'s Compl., ECF No. 1, at ¶¶ 15, 16, 19, 20, 23, 24.) The agreements that governed the creation of the Images (the "Condé Agreements") state that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by" AL Studio, LLC ("AL Studio"). (SMF ¶¶ 5-6.) Neither Leibovitz nor AL Studio transferred any "exclusive right" identified in § 106 of the Copyright Act for any of the Images to Plaintiff, so Plaintiff does not have standing to bring this lawsuit. (CMF ¶¶ 33, 35, 37.)

Furthermore, "the copyright owner or exclusive licensee must have such status at the time of the alleged infringement." *Pro. LED Lighting*, 88 F.Supp.3d at 1370 (quoting *World Thrust Films Inc. v. Int'l Family Entm't Inc.*, No. 93-0681-CIV, 1996 WL 605957, at *4 (S.D. Fla. Aug. 1, 1996)) (citing *Lorentz v. Sunshine Health Prods., Inc.*, 2010 WL 3733986, at *8 (S.D. Fla. Aug. 27, 2010) ("If Plaintiff did not have the right to sue for accrued infringements at the time she filed this action, she lacks standing to maintain this action.") (citing *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir.1969))).

Plaintiff relies upon a November 12, 2014 agreement (the "Artist Agreement") to argue that it has standing. (SMF ¶ 10; Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 6-9; CMF ¶¶ 33, 35, 37.) The Artist Agreement does not transfer an "exclusive right" in the copyright for any of the Images to Plaintiff.

3

### I. The Artist Agreement Does Not Confer Standing on Plaintiff

The Artist Agreement is not a valid grant of an exclusive copyright right. Despite using the word "exclusive," the terms of the Artist Agreement demonstrate that no exclusive right identified in § 106 of the Copyright Act is conveyed to Plaintiff therein. The relevant portion of the Artist Agreement states:

> Subject to the terms and conditions of this Agreement, Artist hereby grants to [Plaintiff] the exclusive worldwide right to license, market, and promote the Licensed Images (as defined below) for all uses in any and all media. Notwithstanding the foregoing, nothing contained herein shall restrict Artist's right to collaborate with or deliver any Licensed Images to 

(SMF ¶ 10; CMF ¶¶ 33, 35, 37.) The language of the grant plainly demonstrates that it is not an exclusive license or an assignment because Leibovitz retains the right to "deliver any Licensed Images" to ███████ as well as the right to ███ ███████. (SMF ¶ 10; CMF ¶¶ 33, 35, 37.)

The Artist Agreement not only does not restrict Leibovitz from licensing the Images or prosecuting infringements of the same, it expressly allows Leibovitz to use the Images for any ███████. (SMF ¶ 10; CMF ¶¶ 33, 35, 37.) Leibovitz need only ███████████████████████. (SMF ¶ 10; CMF ¶¶ 33, 35, 37.) The Artist Agreement acknowledges that Leibovitz, and third parties she grants rights to, may use the Images in a manner that conflicts with the rights granted to Plaintiff. (SMF ¶ 10; CMF ¶¶ 33, 35,

4

37.) Any license granted to Plaintiff by the Artist Agreement is therefore necessarily nonexclusive and cannot confer standing on Plaintiff.

In *McGraw-Hill*, the court recognized that an authorized agent lacked standing to bring a copyright infringement lawsuit because the agreements in question did not "restrict[] the photographer[ rightsholders] from licensing the same images on their own behalf or prosecuting all other infringements," which meant that although the agreement appointed the plaintiff as the rightsholders "exclusive agent and representative," the plaintiff had not received an exclusive right but rather a nonexclusive license and therefore did not have standing to bring a copyright infringement claim. 2015 WL 585806, at *6.

If the Artist Agreement did grant an exclusive license to Plaintiff, which it does not, courts within the Eleventh Circuit recognize that agreements based on similar language make parties like Plaintiff "an exclusive licensing agent" that lacks standing to sue for copyright infringement because "the exclusive right to authorize *others* to use the copyright at issue . . . is not a § 106 right" and is instead derived solely from the licensing contract. *Creative Photographers*, 2023 WL 2482962, at *4 (citing *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F.Supp. 1564 (N.D. Ga. 1987)).

In *Original Appalachian Artworks*, the court considered an agreement that granted the plaintiff "the exclusive worldwide rights to license the designs, trademarks, and tradenames of [the rightsholder] in the areas of subsidiary, literary, and audiovisual rights." 679 F.Supp. at 1568. The court found that although the agreement gave the plaintiff "the exclusive right to authorize third parties to prepare and reproduce materials in literary form based on" the rightsholder's designs, the "exclusive worldwide right" to license the rightsholder's designs did not establish standing. *Original Appalachian Artworks*, 679 F.Supp. at 1568.

5

In *Creative Photographers*, the Northern District of Georgia found that an agreement containing the following language did not confer statutory standing on a plaintiff asserting a copyright infringement claim:

> You retain [Plaintiff] as your exclusive agent to sell, syndicate, license, market or otherwise distribute any and all celebrity/portrait photographs and related video portraits, submitted to us by you and accepted by us for exploitation for sale or syndication during the term of this Agreement (the "Accepted Images"). *You must be the sole owner of the copyright for all such photographs* and may not offer any celebrity/portrait photographs for sale or syndication to or through any other agent, representative, agency, person or entity during the Term of this Agreement.

2023 WL 2482962, at *4 (emphasis in original). The court found that the language recited above made the plaintiff the copyright holder's agent but did not convey to the plaintiff an exclusive license of any of the § 106 rights. *Id.* at *5. If a grant stating making the plaintiff in *Creative Photographers* the rights holders "exclusive agent to sell, syndicate, license, market or otherwise distribute any and all" of the works at issue did not confer standing on that plaintiff, Plaintiff in this case does not have standing.

Plaintiff argues that it has standing because the Artist Agreement "granted [Plaintiff] 'the exclusive worldwide right to license, market, and promote the [Images] . . . for all uses in any and all media." (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 14.) Plaintiff's sole argument that it has standing is based on its asserted "exclusive right to license [the Images] to third parties [confers] standing to pursue any infringements of the [Images]." (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 14.)

Plaintiff's reliance on *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) is misplaced. In *Minden*, the plaintiff relied on a licensing agreement that granted it "the unrestricted, exclusive right to *distribute*, License, *and/or exploit* the Images . . . without seeking special permission to do so." 795 F.3d at 1000 (emphasis added). The licensing

6

agreement in *Minden* "define[d] 'Licensing' as 'the marketing, grant, lease, sale, use, or other exploitation of *reproduction rights* to an Image.'" *Id.* (emphasis added). The right to distribute and the right to reproduce are both rights identified in § 106 of the Copyright Act.

In the present case, the Artist Agreement does not grant Plaintiff an exclusive right to any of the copyright rights identified in § 106 of the Copyright Act. Instead, it merely conveys the right "to license" the Images.

In *Minden*, the Ninth Circuit also faced a practical issue not faced in this case because the plaintiff in *Minden* brought an action representing many photographers. *Id.* at 1005. Explaining its decision, the Ninth Circuit stated that because the plaintiff in that action represented many photographers, a finding that the plaintiff did not have standing would force the photographers to bring suit individually, which would present a "significant practical disadvantage in seeking to protect a copyrighted work." *Id.* No such disadvantaged is faced by the Plaintiff.

Plaintiff also argues that Defendants should not be permitted to invoke § 204(a) of the Copyright Act to avoid suit for copyright infringement. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 14.) In support of this argument, Plaintiff cites to two cases. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 770 F.3d 96, 99 (11th Cir. 1995) (citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982)). Plaintiff's reliance on these cases is also misplaced.

In *Eden Toys*, the Second Circuit considered a plaintiff that asserted rights it received under a license granted pursuant to pre-1978 copyright law, which allowed an exclusive license to be granted orally or by conduct. 697 F.2d 27, 36. The plaintiff in *Eden Toys* argued that it received an exclusive license of a § 106 copyright right pursuant to an informal understanding of a 1975 agreement and that the informal understanding was formalized in a 1980 written

amendment to the 1975 agreement. *Id.* Under those circumstances, the Second Circuit recognized that a license need not be in writing at the time it is initiated and § 204(a)'s requirement that an exclusive license be in writing could be satisfied by the copyright owner's later execution of a writing that confirms the grant. 697 F.2d 27, 36.

In the present case, Plaintiff asserts rights in works covered by post-1978 copyright law and does not assert that it received a grant of § 106 copyright rights in the Images prior to bringing this lawsuit that was later ratified by written agreement. Plaintiff asserts only that the Artist Agreement's grant of the right "to license" the Images confers standing upon Plaintiff. As such, Plaintiff does not have standing to bring this lawsuit.

In *Imperial Residential Design*, the Eleventh Circuit considered a similar case "where both the original owner and the transferee have joined as plaintiffs in the same lawsuit." 70 F.3d 96, 99 (11th Cir. 1995). Plaintiff brings the present lawsuit by itself and does not claim to have received an exclusive license via an oral grant later ratified by a written agreement. The Eleventh Circuit's ruling in *Imperial Residential Design* does not allow Plaintiff to skirt the requirements of § 204(a) of the Copyright Act.

Finally, Plaintiff argues that a District of Utah ruling on a defendants motion for judgment on the pleadings shows that Plaintiff has standing to bring this lawsuit. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 14.) In the cited case, Plaintiff's complaint alleged a "right to distribute copies of the images to the public." *Great Bowery v. Best Little Sites*, 671 F.Supp.3d 1297, 1311 (D. Utah 2023). To the extent that the District of Utah's ruling held that an exclusive right to license a copyrighted work includes a transfer of all six § 106 copyright rights, it misconstrues the law and its holding is contradicted by the caselaw cited above. The court held that "[t]he Copyright Act recognizes that an exclusive license is effectively a transfer of

8

ownership over the rights licensed." *Id.* at 1312. That is true in that an exclusive license of one of the § 106 copyright rights does confer standing on a party to bring suit for infringement of those rights. The District of Utah was wrong to the extent it found that an exclusive license "to license" a work confers standing on the licensee.

Plaintiff own arguments illustrate why even an exclusive right "to license," which Plaintiff does not have, does not confer standing to bring this lawsuit. Plaintiff argues that Defendants infringed upon two rights identified in § 106 of the Copyright Act. Plaintiff does not argue that Defendants infringed upon Plaintiff's exclusive right "to license" the Images.

## II. The § 106 Rights Plaintiff Asserts as Infringed are Not the Rights Granted to Plaintiff in the Artist's Agreement

"The legal . . . owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement *of that particular right* committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added).

Plaintiff does not argue that Defendants have infringed upon its right "to license" the Images. Plaintiff argues that Defendants have infringed upon the display right and the right to reproduce the Images. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 17-19.) Although Plaintiff argues that "[t]wo of the exclusive rights possessed by [Plaintiff are the] right to publicly display the [Images] and the right to reproduce the [Images,]" Plaintiff does not point to any grant from a rights holder to it that transferred an exclusive right to display or distribute the Images. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 31, at 18.) Even if an exclusive right "to license" the Images was a § 106 copyright right that gave Plaintiff standing to bring this suit, Plaintiff does not argue that Defendants infringed upon its right "to license" the Images. Because Plaintiff cannot show that it held an exclusive right to display or distribute the Images, it does not have standing to bring this action alleging that Defendants infringed upon those two rights.

9

### III. AL Studio's Agreements with Condé Nast Prevent Plaintiff From Receiving an Exclusive License of Any § 106 Rights in the Images

The Images cited in Plaintiff's Complaint were created under agreements between AL Studio, LLC ("AL Studio") and Condé Nast (the "Condé Agreements"). (SMF ¶¶ 21-26.) Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by" AL Studio. (SMF ¶ 27.) The Artist Agreement does not mention AL Studio. (SMF ¶¶ 10.) There is no written transfer in the record of any rights in the Images from AL Studio to Leibovitz or Great Bowery. (SMF ¶ 28.)

Each of the Condé Agreements grants Condé Nast certain exclusive rights in the Images for a period of time as well as nonexclusive rights in each Image for the duration of the copyright. (SMF ¶ 29.) Each of the Condé Agreements states that AL Studio:

> will not allow any of the [Images] that are Published in a Publication, or any Works similar to such [Images], to be used for any commercial, merchandising, or advertising purpose . . . unless [AL Studio] first obtains [Condé Nast's] written consent, which [Condé Nast] may withhold in its sole discretion. This requirement will continue to apply . . . as long as [AL Studio] and [Condé Nast] still have a professional contractual relationship.

(SMF ¶ 30.) The most recent of the Condé Agreements was in effect until April 30, 2024, which is well after Plaintiff initiated this lawsuit. (SMF ¶ 25.) Because Condé Nast may refuse to allow use of the Images, Great Bowery could not have received an exclusive right to license or use the Images via the Artist Agreement or Authorization Letter.

Each Condé Agreement further states that AL Studio:

> grants [Condé Nast], for the full term of copyright, the non-exclusive right to Publish, print, re-Publish, and reprint the [Images] (including in anthologies as permitted below), the unrestricted right to use any cover containing any [Image](s) as a cover (i.e., in the original cover layout) for any purpose at any time, the right to make and authorize the making of reprints or stand-alone copies of the article feature including any [Image](s) for any purpose, the right to authorize the use of any [Image](s) in

10

> the original layout shown in the applicable Publication as set
> dressing or props in movies, television shows, and other
> productions, and in addition, the right to use any [Image](s) . . . in
> Publishing, promoting, advertising and publicizing the
> Publication(s) in which the [Image](s) appear.

(SMF ¶ 31.) Because AL Studio granted Condé Nast the nonexclusive right to publish and print each of the Images as well as the "unrestricted right" to use each of the Images as they appeared in Condé Nast's publications "for any purpose at any time" for the "full term of the copyright," Plaintiff could not have received an exclusive license to the Images. Any license granted to Plaintiff would necessarily be nonexclusive because it would coexist with Condé Nast's rights. Because a holder of a nonexclusive license does not have standing to bring an action for copyright infringement, Plaintiff does not have standing.

### IV.   Considering Substantially Similar Facts, the District of Oregon Held that Plaintiff Lacked Standing to Bring a Copyright Infringement Lawsuit

On January 2, 2020, Plaintiff filed a complaint asserting a claim for copyright infringement against a defendant in the District of Oregon (the "Oregon Action"). (SMF ¶ 17.) The complaint in that case alleged that the defendant infringed upon the copyright in two photographs taken by Leibovitz for the June 2015 issue of *Vanity Fair* magazine. (SMF ¶ 18.) In the Oregon Action, Plaintiff produced three documents concerning the rights in two photographs created by Leibovitz for Condé Nast:  (1) the same Artist Agreement produced to Defendants in this case; (2) the same Authorization Letter produced to Defendants in this case; and (3) the Condé Agreement that governed Leibovitz's creation of photographs for the June 2015 issue of *Vanity Fair* magazine. (SMF ¶ 19.)

The court held that the Authorization Letter "does not convey a right in any copyrighted works to Plaintiff" and "establishes, instead, that Plaintiff is not a holder of any exclusive right to any of Leibovitz's copyrighted works." *Id.* at *3. *Great Bowery, Inc. v. Cascade Digital Media*

*LLC*, No. 6:20-cv-00009-MK, 2021 WL 3716654, at *2-3 (D. Or. July 15, 2021), *report and recommendation adopted,* No. 6:20-CV-00009-MK, 2022 WL 939871 (D. Or. Mar. 29, 2022).

Considering the Artist Agreement, the District of Oregon held that, because the Artist Agreement governed "those images provided to [Plaintiff] by Artist or Artist's authorized agent" and Plaintiff did not submit any evidence showing that Leibovitz had provided the relevant images to Plaintiff, the Artist Agreement did not provide Plaintiff with standing to bring a nearly identical lawsuit. *Id.* at *2. In the present case, Plaintiff did not produce any written communications showing that Leibovitz provided the Images to Plaintiff. (SMF ¶ 32.)

## CONCLUSION

A copyright owner may not delegate the ability to enforce its rights through litigation. Only the owner of an exclusive right to one of the six copyright rights identified in the Copyright Act may bring a lawsuit. Because Plaintiff does not own an exclusive right to any of the six copyright rights, Plaintiff does not have standing to bring this suit. Plaintiff's motion for summary judgment should be denied in its entirety.

Date:  New York, New York                                Respectfully submitted,
       May 24, 2024

                                              By:   /C. Cory Mauro/
                                                    C. Cory Mauro
                                                    Florida Bar No. 384739
                                                    MAURO LAW P.A.
                                                    1001 Yamato Road, Suite 401
                                                    Boca Raton, Florida 33431
                                                    (t) 561.202.1992
                                                    (e) cory@maurolawfirm.com
                                                    (e) service@maurolawfirm.com

                                                    Anderson J. Duff (*pro hac vice*)
                                                    DUFF LAW PLLC
                                                    353 Ocean Ave. Ste. 4E
                                                    Brooklyn, New York 11226
                                                    (t) 646.450.3607
                                                    (e) ajd@hoganduff.com

*Attorneys for Defendants*
*Consequence Sound LLC and*
*Consequence Media Group*

13