Melissa Higbee, SBN 62465
Taryn R. Murray, *Pro Hac Vice*
HIGBEE & ASSOCIATES
1504 Brookhollow Drive, Suite #112
Santa Ana, CA 92705
(714) 617-8373
mh@higbee.law
tmurray@higbee.law
*Attorneys for Plaintiff Trunk Archive*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| GREAT BOWERY INC d/b/a TRUNK ARCHIVE, <br><br> Plaintiff, <br><br> v. <br><br> CONSEQUENCE SOUND LLC, CONSEQUENCE MEDIA GROUP INC., and DOES 1 through 10 inclusive, <br><br> Defendants. | Case No. **9:23-cv-80488** <br><br> **OPPOSITION TO DEFENDANTS CONSEQUENE SOUND LLCC AND CONSEQUENCE MEDIA GROUP INC'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I.    INTRODUCTION................................................................................................1

II.   FACTUAL BACKGROUND .............................................................................1

III.  SUMMARY JUDGMENT SHOULD BE DENIED TO DEFENDANTS ....................2

  A.  A Dispute Of Facts Exist as to Whether the Artist Agreement
Was A Valid Conveyance of Rights Under 17 U.S.C. § 204............................................2

  B.  A Dispute of Exists as to Whether the Artist Agreement Granted
Plaintiff Trunk Archive Exclusive Rights Under 17 U.S.C. § 106 ................................3

    1.  Plaintiff Has Provided Testimony From Both Trunk Archive
and Annie Leibovitz That Establishes Their Intent to Grant
Trunk Archive Exclusive §106 Rights in the Images
and Therefore Standing to Sue ..........................................................................3

    2.  The Conde Nast Agreements Do Not Prevent Plaintiff From
Receiving any of the Exclusive §106 Rights.....................................................7

      a.   AL Studio does not have any rights to the Images .......................................7

    3.  Defendant has failed to demonstrate material facts that establish
that Conde Nast has any of Exclusive §106 Rights or non-exclusive
rights in the Images that would interfere with Trunk Archive's
status as the Exclusive Licensor.....................................................................9

      a.  Conde Nast's only exclusive right was the right of first publication..........9

      b.  Conde Nast's nonexclusive rights are expressly limited. .............................10

      c.  The Conde Agreement's limitations on commercial, merchandising,
and advertising uses is a contractual covenant not a condition of the
licenses granted by Annie Leibovitz to Conde Nast for use
of the Images..................................................................................................12

  C.  The Court's Finding and Recommendation, the Order Adopting the
Finding and Recommendations, and the Judgment in the Oregon Action
Were All Vacated and Are Therefore Do Not Exist In The Eyes of The Court..........14

IV.  CONCLUSION ..........................................................................................16

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**STATUTES**

17 U.S.C. § 101.................................................................................2, 6, 10

17 U.S.C. § 106...........................................................................3, 4, 5, 7, 9, 10

17 U.S.C. § 106(3)..........................................................................5

17 U.S.C. § 201(d)(11) ....................................................................6

17 U.S.C. § 204 ...........................................................................1, 2, 3,

17 U.S.C. § 204(a) ........................................................................2, 3, 4, 7

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56........................................................................1, 6

Fed. R. Civ. P. 56(c)(1)..................................................................3, 7, 14, 15

**CASES**

**U.S. Supreme Court**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) ........................2, 3, 6, 8, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).....................................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp* 4
75 U.S. 574, 587 (1986).................................................................2, 3, 7, 14, 15

**2nd Circuit Court of Appeals**

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
697 F.2d 27, 36 (2nd Cir.1982).........................................................4, 6

*Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) ...............................13, 14

**7th Circuit Court of Appeals**

*Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377 (7th Cir. 2011)............6, 11

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ...............................13

**9th Circuit Court of Appeals**

*Corbello v. DeVito*, 777 F.3d 1058, 1064 (9th Cir. 2015) ............................6

*DRK Photo v. McGraw-Hill Global Education Holdings, LLC*,
870 F.3d 978, 983 (9th Cir. 2017) ...................................................9

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). ..............................13

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*F.B.T. Prods., LLC v. Aftermath Records,*
621 F.3d 958, 965 (9th Cir. 2010) ................................................................9, 13

*See Great Bowery, Inc. v. Cascade Digit. Media, LLC,*
2022 U.S. App. LEXIS 22039 ........................................................................15

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 7
95 F.3d 997, 1003 (9th Cir. 2015) .......................................................5, 6, 9, 11

*Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d
881, 884, 890 (9th Cir.2005)..............................................................................7

**11ᵗʰ Circuit Court of Appeals**

*Borden v. Katzman*, 881 F.2d 1035 (11th Cir. 1989)....................................10

*Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993) ...........2, 6

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
70 F.3d 96 (11th Cir.1995) .................................................................................4

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753-54 (11th Cir. 1997) .........13

*Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ..................................15

*Rose v. M/V "GULF STREAM FALCON"*,
186 F.3d 1345, 1350 (11th Cir. 1999). ..............................................................4

*Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ........10

*United States v. M.C.C. of Fla., Inc.*,
967 F.2d 1559, 1561 (11th Cir. 1992) ..............................................................15

*United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002)......15

*Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870 (11th Cir. 2019) ..............15

**U.S. Court of Federal Claims**

*RT Comput. Graphics, Inc. v. United States*, 44 Fed. Cl. 747 (1999)............14

**California District Courts**

*Nafal v. Carter,* 540 F. Supp. 2d 1128 (C.D. Cal. 2007)......................11

*Shapiro, Bernstein & Co. v. Bleeker*, 224 F. Supp. 595 (D.C.Cal. 1963)......10

**Florida District Courts**

*Applied Concepts Unleashed, Inc. v. Matthews*, 2012
U.S. Dist. LEXIS 195153  (S.D. Fla.)..............................................................4

*Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2013
U.S. Dist. LEXIS 90602 (M.D. Fla. June 27, 2013)....................................13

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*,

88 F. Supp. 3d 1356 (S.D. Fla. 2015) ........................................................2

**George District Courts**

*Creative Photographers, Inc. v. Julie Torres Art, LLC*,
No. 1:22-CV-00655-JPB, 2023 U.S. Dist. LEXIS 41343 (
(N.D. Ga. Mar. 13, 2023)................................................................5, 10

**New York District Courts**

*Atlantis Info. Tech. v. CA, Inc.*,
485 F. Supp. 2d 224, 233-34 (E.D.N.Y. 2007)..............................................13

**Oregon District Courts**

*Great Bowery Inc. v. Cascade Digital Media LLC,*
No. 6:20-cv- 00009-MK (D. Or. Jan. 2, 2020) ..............................................15

**Wisconsin District Courts**

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 2010 U.S. Dist.
LEXIS 2276, 2010 WL 148389, at *6 (E.D.Wis. Jan. 12, 2010) ..................14

**Florida Supreme Court**

*Arden Shoe Corp. v. Dr. MW*. Locke Shoes of Miami, Inc.,
50 So.2d 120, 122 (Fla. 1951) ..................................................................4

**TREATISES**

4 *Nimmer & Nimmer*, § 10.02[A]. ..............................................................6

<u>**MEMORDANDUM OF POINTS AND AUTHORITY**</u>

## I.    INTRODUCTION

In their Motion for Summary Judgment, Defendants Consequence Media Sound LLC and Consequence Media Group Inc ("Defendants") move for summary judgment against Plaintiff Great Bowery Inc. d/b/a Trunk Archive ("Trunk Archive" or "Plaintiff") solely based on the issue of standing. A genuine issue of material fact exists in Defendants' standing argument as to 1) whether the Artist Agreement was a valid transfer of exclusive rights under U.S.C. § 204; 2) what exclusive rights were granted to Trunk Archive by Annie Leibovitz in the Artist Agreement; 3) what rights were granted to Condé Nast under the Condé Agreements; and 4) the judicial and factual effects of a vacated judgment.

## II.    FACTUAL BACKGROUND

Plaintiff Great Bowery Inc. d/b/a Trunk Archive is a full-service photography licensing agency representing some of the most prominent photographers in the world. (ECF #1 at ¶9). One of Trunk Archive's most prominent photographers is Annie Leibovitz ("Leibovitz"), who is one of the world's best known and most accomplished portrait photographers. (Id at ¶11-12). On November 14, 2012, Trunk Archive and Leibovitz entered into a contract that granted Trunk Archive the exclusive worldwide right to "license, market, and promote the Licensed Images for all uses in any and all media". (ECF #33-1 at ¶39, Ex. 29; ECF #33-2 at ¶4). Between 2015 to 2024, Leibovitz entered into contracts with Condé Nast ("Condé Agreements"), under which Leibovitz' services were contracted to create photographs. (ECF #33-1, ¶22-25, Ex. E, F, G, H). As part of the Condé Agreements, Leibovitz' created 31 original photographs of the cast and crew of Star Wars: *The Force Awakens, Star Wars: The Last Jedi,* and *Star Wars: The Rise of Skywalker* (the "Images"). (ECF #33-1 at ¶4-9, ¶13-23, ¶27-34). Each of the Images was registered with the U.S. Copyright Office by Leibovitz with assistance from her studio, AL Studio LLC. (*Id* at ¶10-12, Ex. 7; ¶24-26, Ex. 719 ¶35-37, Ex. 28; Supplemental Declaration of Annie Leibovitz ("Suppl. Leibovitz Decl.") at ¶8-19).

Shortly after the Images were initially published, Leibovitz provided them to Trunk Archive so that Trunk Archive could act as the exclusive licensor under the terms of the Artist Agreement. (ECF #33-1 at ¶44, ¶45, ¶52; Suppl. Leibovitz Decl. at ¶20). On June 8, 2022, Trunk Archive discovered all of the Images published to Defendants' website, www.consequence.net

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

without authorization or a license from Trunk Archie or Leibovitz. (ECF #31-3 at ¶6-10, ¶30). Shortly thereafter, Plaintiff Trunk Archive filed a claim for copyright infringement against Defendants (ECF #1). Defendants now challenge Trunk Archive's standing to sue.

## III. SUMMARY JUDGMENT SHOULD BE DENIED TO DEFENDANTS

Summary judgment is proper only when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Ibid*. The nonmoving party meets its burden by producing specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). In deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587-88, and may not weigh the evidence or make credibility determinations. And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993).

### A. A Dispute Of Fact Exists as to Whether the Artist Agreement Was a Valid Conveyance of Rights under 17 U.S.C. § 204

"A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance . . . of the exclusive rights comprised in a copyright . . . not including a nonexclusive license." 17 U.S.C. § 101. "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*, 88 F. Supp. 3d 1356 (S.D. Fla. 2015) (quoting 17 U.S.C. § 204(a)).

Defendants contend that the undisputed facts show that; 1) the Artist Agreement was signed by an unknown third party; (ECF 33.1 ¶10) the Artist Agreement was not signed by Leibovitz (ECF 33.1 ¶11) and; 3) nothing in the record indicates that the person who signed the Artist Agreement did so as Annie Leibovitz's duly authorized agent (ECF 33.1 ¶16). Defendants rely on these facts to claim that there was not a proper instrument of conveyance for Trunk Archive to

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

receive exclusive rights under 17 U.S.C. § 106.

As the nonmoving party, Trunk Archive need only produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Trunk Archive has clearly met this burden. First, Trunk Archive has provided testimony directly from Annie Leibovitz establishing that the Artist Agreement is signed by Annie Leibovitz' duly authorized agent and manager, Karen Mulligan, with Annie Leibovitz' consent. (Leibovitz Decl. ¶40, ECF #31-1). Further, Defendants relies on the Condé Agreement several times throughout their motion but fail to acknowledge that Karen Mulligan is also identified as a signatory and agent for Leibovitz in all but one of the Condé Agreements. (Duff Decl. ¶¶ 7-10, Ex. E, at 20, 23, 26, Ex. F, at 15, 17, 19, Ex. H, at 15,17.) Given that Defendants' own motion relies partly on the legitimacy of Karen Mulligan's ability to execute contracts and documents on Leibovitz' behalf, there is a dispute of material fact as to Defendants' claim that the Artist Agreement was not a proper conveyance under 17 U.S.C. § 204.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). The validity of the Artist Agreement is material to Trunk Archive's status as the exclusive licensor of Annie Leibovitz' Images and thus its ability to bring this suit. And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Ibid.* Plaintiff contends that direct written testimony from Annie Leibovitz asserting Karen Mulligan's right as her agent and manager is sufficient evidence for a reasonable trier of fact to decide in favor of Trunk Archive.

Thus, summary judgment must be denied.

**B. A Dispute of Fact Exists as to Whether the Artist Agreement Granted Plaintiff Trunk Archive Exclusive Rights under 17 U.S.C. § 106**

**1. Plaintiff Has Provided Testimony From Both Trunk Archive and Annie Leibovitz That Establishes Leibvotiz' Intent to Grant Trunk Archive Exclusive §106 Rights in the Images and Therefore Standing to Sue**

Trunk Archive need only produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Defendants essentially contend that the language of the Artist Agreement did not grant to Trunk Archive any exclusive rights under 17

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

U.S.C. § 106. However, Trunk Archive has presented specific facts evidencing the intent of Leibovitz and Trunk Archive to enter into an exclusive licensing agreement conferring on Trunk Archive standing to sue as an exclusive rights holder under 17 U.S.C. § 106.

The 11th Circuit has held "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96 (11th Cir. 1995) See also *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). It is well settled that "the actual language of the contract is the best evidence of the intent of the parties." *Rose v. M/V "GULF STREAM FALCON*", 186 F.3d 1345, 1350 (11th Cir. 1999). Under Florida law, when interpreting whether a license granted in writing is exclusive or non-exclusive, the court must interpret the contract "reasonably to give effect to the plain intention of the parties as adduced from the whole agreement, its nature, their situation, and the objects they had in view in making it.", *Applied Concepts Unleashed, Inc. v. Matthews*, 2012 U.S. Dist. LEXIS 195153 (citing *Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc*., 50 So.2d 120, 122 (Fla. 1951)).

The 11th Circuit's decision in *Imperial Residential Design* should prevail here. Plaintiff had provided direct written testimony from Annie Leibovitz indicating her intention to enter into an exclusive contract with Trunk Archive: "On or about November 12, 2014, I entered into an agreement ("Artist Agreement") with Plaintiff Great Bowery Inc. d/b/a Trunk Archive for exclusive worldwide representation to license my photographs." (ECF 31-1, Leibovitz Decl. ¶39, Exhibit 29 ¶1). Further, Trunk Archive provided direct written testimony from Trunk Archive indicating their intention to enter into an exclusive contract with Annie Leibovitz: "On or about November 12, 2014, Trunk Archive entered into an agreement ("Artist Agreement") with photographer Annie Leibovitz which granted Trunk Archive the exclusive worldwide representation to license Ms. Leibovitz' photographs." (ECF 31-3, Koszta Decl. ¶ 2). Moreover, Annie Leibovitz provided direct written testimony that the Images were provided to Trunk Archive by Annie Leibovitz under the terms of the Artist Agreement following their initial publication, so that Trunk Archive could act as the exclusive licensor for the Images (ECF 31-1 Leibovitz Decl.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

¶44, ¶48, ¶52).

The Artist Agreement conveyed to Trunk Archive "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media.". In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, the Court found that where copyright holders granted an exclusive license to an agency to act as the exclusive licensor for their images "appoint[] [Minden] as sole and exclusive agent and representative with respect to the Licensing of any and all uses of Images" the copyright holders conveyed three of the enumerable rights under 17 U.S.C. § 106, which included the right to reproduce the works and "the right "to authorize" both the distribution and the display of the photographs by granting licenses to third parties", of which the right "to authorize" these acts is also an "exclusive right" under the Act. See § 106(3), (5)." 795 F.3d 997 (9th Cir. 2015). Defendants rely heavily on *Creative Photographers, Inc. v. Julie Torres Art, LLC*, which, citing to *Minden*, distinguishes the two cases by pointing out that the agreement at issue in *Creative Photographer,* explicitly appointed the Plaintiff as the "exclusive agent" rather than granting the Plaintiff exclusive rights. "Minden is distinguishable. The agency agreements in that case contained clear language indicating that they transferred to Minden an exclusive right (rather than merely appointed Minden as an exclusive agent)" 1:22-CV-00655-JPB, 2023 U.S. Dist. LEXIS 41343 (N.D. Ga. Mar. 13, 2023). Thus, under the Artist Agreement, Leibovitz granted Trunk Archive the exclusive right to authorize the reproduction, display, and distribution of the Images by granting "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media.".

Moreover, the fact that that Leibovitz retains the ability to grant permission for use of her copyrights to specific third parties or for personal use does not eliminate Trunk Archive's exclusivity as a licensee. "That the photographers have retained some limited degree of authority to grant licenses themselves does not eliminate Minden's interest in the copyright as the sole entity to act as the photographers' licensing agent. It merely means that *both* Minden and the photographers, under the terms of the Agreements, can prevent those third parties who have not received permission to use the photographs from using them. To hold otherwise would be inconsistent with the divisibility principle embodied by the 1976 Act." *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015). Further, the Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

someone else. 17 U.S.C. § 201(d)(11). It specifies that the owner can transfer a right, or a share of such a right, via "an assignment, . . . exclusive license, or any other conveyance, . . . whether or not it is limited in time or place of effect." *Id*. § 101. That is, either an assignment (which transfers legal title to the transferee) or an exclusive license (which transfers an exclusive permission to use to the transferee) qualifies as a "transfer" of a right in a copyright for the purposes of the Act. *Minden Pictures, Inc. v. John Wiley & Sons, Inc*. Citing to *Corbello v. DeVito*, 777 F.3d 1058, 1064 (9th Cir. 2015); *HyperQuest*, 632 F.3d at 383; Nimmer, supra, at § 10.02[A].

There is no dispute between Annie Leibovitz or Trunk Archive as to the status of the copyrights at issue in this claim. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913. Here, Defendants arguments would ignore the specific and undisputed facts presented by Plaintiff regarding the stated intentions of both Leibovitz and Trunk Archive in order to obfuscate their own liability for copyright infringement.

Moreover, Defendant's assert as an undisputed fact that "Plaintiff Great Bowery Inc. is not mentioned in any of the copyright registrations cited in Plaintiff's Complaint. (Duff Decl. ¶¶ 3-5, Ex. A, at 4-6, Ex. B, at 2-4, Ex. C, at 2-3.)". There is a genuine dispute of material fact here because Plaintiff Trunk Archive is listed in VA 2-192-380 under "Rights and Permissions". (See Duff Decl. ¶5, Exhibit C). Not only does the content of VA 2-192-380 directly contradict Defendants' purported "fact", but it further evidences Leibovitz' and Trunk Archive's intent for Trunk Archive to hold exclusive rights to the Images.

The fact that the Authorization Letter signed by Leibovitz "the holder of all rights, title and interest in and to the copyrighted works . . . ." (Duff Decl. ¶ 14, Ex. L, at 2) does not take away from the effect of the Artist Agreement as Leibovitz is still able to bring suit as the legal owner of the copyrights in the Images, even after granting Trunk Archive exclusive rights. "[t]he Copyright Act authorizes only two types of claimants to sue for copyright infringement: [i] owners of copyrights, and [ii] persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co., Inc*., 697 F.2d 27, 32 (2d Cir. 1982), superseded on other grounds by Fed. R. Civ. P. 52(a).

Moreover, Authorization Letter on its own conveys upon Trunk Archive the "right to sue"

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

by granting Trunk Archive the right to act on Leibovitz' behalf on "all matters relating to copyright infringement of my work" which includes "prosecuting litigation...in my name and on my behalf as a named claimant or co-claimant..." (Duff Decl. ¶ 14, Ex. L, at 2). "[T]he assignment of a right to sue does not alone convey 'exclusive' rights for purposes of standing under the Copyright Act." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884, 890 (9th Cir.2005) ("The right to sue for an accrued claim for infringement is not an exclusive right under [17 U.S.C.] § 106" such that "[t]he bare assignment of an accrued cause of action" does not satisfy the standing requirement of section 501(b))). The right to sue on its own would not convey standing upon Trunk Archive to sue for copyright infringement of the Images, however, in conjunction with the Artist Agreement, Trunk Archive has been granted the right to sue as well as the "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media.". As explained above, *Minden* establishes that the exclusive right to authorize the display, reproduction, and distribution of copyrighted material is sufficient to establish standing to as an exclusive licensee in copyright infringement actions.

In conclusion, Trunk Archive has provided specific facts that show there is a genuine issue of fact as to whether the Artist Agreement conveyed Exclusive ¶106 rights under of section 204(a), especially in light of the 11th Circuit precedent regarding the intention of the copyright holder and transferee. Because the issue of standing is "material" in that it will certainly "affect the outcome of the suit" and Plaintiff has provided "evidence on which the jury could reasonably find for the non-moving party", summary judgment must be denied.

## 2. The Condé Nast Agreements Do Not Prevent Plaintiff From Receiving any of the Exclusive §106 Rights

Defendants claim that the undisputed facts show that the Condé Agreements bar Plaintiff from receiving an exclusive license of any of the § 106 rights in the Images because 1) the Condé Agreements were between AL Studio and Condé Nast and there is no written conveyance from AL Studio to Annie Leibovitz or Trunk Archive and 2) because the Condé Agreements granted Condé Nast "exclusive rights" and "nonexclusive rights" for the duration of the copyright.

### a. AL Studio does not have any rights to the Images

Trunk Archive need only produce specific facts, by affidavit or other evidentiary materials to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1).

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Trunk Archive has provided direct written testimony from Annie Leibovitz explaining her relationship with AL Studio. Annie Leibovitz owns the business entity AL Studio LLC (Suppl. Leibovitz Decl. ¶3). AL Studio negotiates, organizes, and manages Annie Leibovitz' business contracts on her behalf as an individual. (*Id at*. ¶4). AL Studio never held the copyrights to any of the Images. (Suppl. Leibovitz Decl. ¶5, Duff Decl. ¶3-5, Ex. A, B, C.). AL Studio assists with registering Annie Leibovitz' copyrights. (Suppl. Leibovitz Decl. ¶8).

Additionally, Each of the Condé Agreements is entered into by "AL Studio, LLC ("Contributor") f/s/o Annie Leibovitz ("Artist") and includes a "Guaranty Rider" signed by Annie Leibovitz indicating her undertaking of all obligations of the Condé Agreements. (Duff Decl. ¶7-10, Ex. E at 1, 16. Ex. F at 1, 16, Ex. G at 1, 16, Ex H, at 1, 16.) Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by *Contributor*" (emphasis added). (Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.) The Condé Agreements were each negotiated ***for the services*** of Annie Leibovitz.

Defendants present evidence of the registration certificates throughout their motion as evidence that Trunk Archive does not have exclusive rights in the Images. However, the registration certificates dispute their own "material facts" as to AL Studios as they show a) that Annie Leibovitz is the copyright holder to the Images submitted with the registration certificates and b) AL Studio was involved in the registration of the copyrights on Annie Leibovitz' behalf.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). While it is not clear if Defendants are claiming that AL Studio is the party with standing to sue in this matter, Defendants present as an undisputed fact that there was "Nothing in the record shows a documented transfer of any rights in the Images from AL Studio to Leibovitz or Great Bowery." (ECF 33-1 ¶28, Duff Decl. ¶ 18.) There is nothing in the record because AL Studio does not have any rights to the Images. And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). Plaintiff contends that direct written testimony from Annie Leibovitz regarding her relationship with AL Studio, the Guaranty Rider that was attached to each of the Condé Agreements, and AL Studio's involvement in the registration of the copyrights in the Images creates a genuine dispute of as to whether AL Studio had any right to the Images.

Thus, summary judgment must be denied.

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**3. Defendant has failed to demonstrate material facts that establish that Condé Nast has any of Exclusive §106 Rights or non-exclusive rights in the Images that would interfere with Trunk Archive's status as the Exclusive Licensor.**

    a. **Condé Nast's only exclusive right was the right of first publication**

Defendant's own evidence contains a dispute of material fact as to Condé Nast's rights in the Images. Further, Defendant has failed to establish material facts that show that Condé Nast was granted any other exclusive rights other than the right of first publication.

Defendant contends that "Each of the Condé Agreements grants Condé Nast certain exclusive rights in the Images". (ECF 33-1 ¶29). Condé Nast was granted a *single* "exclusive right" under the Condé Agreements for the "exclusive first worldwide right to publish, distribute, display...or otherwise use in any manner or media in connection with the content, dissemination, or promotion of any Publication". (Duff Decl. ¶¶ 7-10, Ex. E, at 2, 6-12, Ex. F, at 2, 5-11, Ex. G, at 2, 5-11, Ex. H, at 2, 5-11.). Moreover, this "exclusive right" was limited in scope by the Condé Agreement's definition of "Publication" which defines "Publication in the context of Condé Agreements as: "*Vogue* magazine and *Vanity Fair* magazine and/or for any other publication owned, published, or licensed by or affiliated with Company, whether existing or future, and whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media not herein described" (Duff Decl. ¶ 7-10, Ex. E, at 2, Ex F, at 2, Ex. G at 2, Ex. H at 2.).

"[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). Either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in copyright for purpose of the Act." *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (quoting *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015).

Defendants do not claim that Condé Nast is the party with proper standing to sue based on the Condé Agreements. Further, Defendants fail to provide any facts that would establish that the agreements between Condé Nast and Annie Leibovitz transferred any other exclusive rights to Condé Nast other than the right of first publication. The plain language of the Condé Agreements

clearly limits any exclusivity to the single right of first publication and none of the enumerated rights listed in 17 U.S.C. § 106: "exclusive first worldwide right to publish, distribute, display...or otherwise use in any manner or media in connection with the content, dissemination, or promotion of any Publication". (Duff Decl. ¶¶ 7-10, Ex. E, at 2, 6-12, Ex. F, at 2, 5-11, Ex. G, at 2, 5-11, Ex. H, at 2, 5-11.).

Trunk Archive does not claim to have the right of first publication over the Images, nor does Trunk Archive claim that the Artist Agreement granted them that right. A copyright owner has the right to sell, vend, or in any other way, to transfer ownership of a copyright or of any of the exclusive rights comprised in a copyright. *Borden v. Katzman*, 881 F.2d 1035 (11th Cir. 1989), *Citing* 17 U.S.C. § 101 (1976) (defining "transfer of copyright ownership"); *Shapiro, Bernstein & Co. v. Bleeker*, 224 F. Supp. 595 (D.C.Cal. 1963). Because 'only the legal or beneficial owner of an "exclusive right" has standing to bring a copyright infringement action' under the Copyright Act." Pro. LED Lighting, 88 F.Supp.3d at 1369 (quoting *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir. 2011)); see also *Creative Photographers*, 2023 WL 2482962, at *3 (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Defendants have failed to establish any fact sufficient to show that Condé Nast was granted any of the § 106 Exclusive Rights or that Condé Nast's exclusive right to first publication interfered with Plaintiff's rights as the exclusive worldwide licensor.

### b. Condé Nast's nonexclusive rights are expressly limited.

A genuine issue of material fact exists as to the scope and effect of Condé Nast's non-exclusive rights to the Images. Defendants claim that because AL Studio granted an "unrestricted right" to use the Images "for any purpose at any time" for the "full term of the copyright" and thus Trunk Archive does not have an exclusive license:

> "grants [Condé Nast], for the full term of copyright, the non-exclusive right to Publish, print, re-Publish, and reprint the [Images] (including in anthologies as permitted below), the unrestricted right to use any cover containing any [Image](s)

as a cover (i.e., in the original cover layout) for any purpose at any time, the right to make and authorize the making of reprints or stand-alone copies of the article feature including any [Image](s) for any purpose, the right to authorize the use of any [Image](s) in the original layout shown in the applicable Publication as set dressing or props in movies, television shows, and other productions, and in addition, the right to use any [Image](s) . . . in Publishing, promoting, advertising and publicizing the Publication(s) in which the [Image](s) appear." (Duff Decl. ¶¶ 7-10, Ex. E, at 10, Ex. F, at 10, Ex. G, at 10, Ex. H, at 9, 10.)

However, Defendants have failed to recognize that the Parties in the Condé Nast agreement specifically limited Condé Nast's "unrestricted right" to the "Publications" defined in the Condé Agreements. Each of the Condé Agreements defines "Publication" as "Vogue magazine and Vanity Fair magazine and/or for any other publication owned, published, or licensed by or affiliated with Company, whether existing or future, and whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media not herein described" (Duff Decl. ¶ 7-10, Ex. E, at 2, Ex F, at 2, Ex. G at 2, Ex. H at 2.)

"A license is nonexclusive because "[t]he copyright owner simply permits the use of a copyrighted work in a particular manner.". When the owner conveys a nonexclusive license to one person, the owner still has the power to do precisely the same thing for everyone else in the world. A license is exclusive not simply when one individual or entity is given the right to use a copyright, but only because the owner promises not to convey that right to anyone outside of those persons or entities who have an interest in the license." *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007). Further, as an explicitly named non-exclusive licensee, "such a licensee has been granted rights only vis-à-vis the licensor, not vis-à-vis the world, he or she has no legal right to exclude others from using the copyrighted work, and thus no standing to bring an infringement suit". *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) *Citing Hyperquest*, 632 F.3d at 385; *Blair & Cotter*, supra, at 1347.

Here, the definition of "Publication" is a material fact that Defendant failed to acknowledge and directly disputes their claim that Condé Nast's rights under the Condé Agreements would coexist and therefore interfere with the rights granted to Trunk Archive by Annie Leibovitz in the Artist Agreement. Annie Leibovitz has granted Condé Nast the non-exclusive right to use the Images in the specifically named Publications for the duration of the copyright. Condé Nast has no legal right under copyright law to exclude others from using the Images or grant third parties licenses in the Images and thus does not effect Trunk Archive's rights as the exclusive licensor in

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the Images. Defendants fail to provide any evidence or facts that show that Trunk Archive's exclusive right to grant third parties licenses in the Images would be at all effected by Condé Nast's pre-existing non-exclusive right to use the Images within the context of their "Publications".

Because a genuine issue of material fact exists as to the scope of Condé Nast's non-exclusive license in the Images, summary judgment should be denied.

### c. The Condé Agreement's limitations on commercial, merchandising, and advertising uses is a contractual covenant not a condition of the licenses granted by Annie Leibovitz to Condé Nast for use of the Images.

A genuine issue of material fact exists as to whether the restrictions placed on Annie Leibovitz in the Condé Agreements regarding the "Commercial/Advertising Use" of the Images is a condition to Condé's license or a contractual covenant to Condé Agreements.

Plaintiff acknowledges that it is an undisputed fact that AL Studio "will not allow any of the [Images] that are Published in a Publication, or any Works similar to such [Images], to be used for any commercial, merchandising, or advertising purpose . . . unless [AL Studio] first obtains [Condé Nast's] written consent, which [Condé Nast] may withhold in its sole discretion. This requirement will continue to apply . . . as long as [AL Studio] and [Condé Nast] still have a professional contractual relationship." (the "Commercial/Advertising Clause") (Duff Decl. ¶¶ 7-10, Ex. E, at 13, Ex. F, at 12, 13, Ex. G, at 13, Ex. H, at 12, 13.) However, Plaintiff contends that because the "Commercial/Advertising" use clause was organized in each of the agreements under separate sections from "Exclusive Rights", "Nonexclusive Rights" and "Miscellaneous Rights; Exclusions; Exercise", Condé Nast and Annie Leibovitz intended for the Commercial/Advertising Clause to create a covenant rather than a condition to the nonexclusive license granted by Leibovitz to Conde Nast or a condition to Leibovitz' rights as the copyright holder.

Several material facts support Plaintiff's assertion that the Commercial/Advertising Clause is a covenant and therefore an issue of contract law rather than a copyright matter. First, Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by Contributor". (Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.) Second, each of the Condé Agreements delineate three separate sections for terms related to the license granted by Leibovitz to Condé Nast for use of the Images – "6. Exclusive Rights", "7.Nonexlusive Rights" and "Miscellaneous Rights; Exclusions; Exercise". *Id.* The Commercial/Advertising Clause is under a separate section entirely "Releases/Restrictions". *Ibid.*

Further, and most importantly, ***Condé Nast itself was not granted any "commercial, merchandising, or advertising" rights in the Images***. The Condé Agreements each explicitly state:

> Notwithstanding the foregoing, the rights granted in this agreement to Company do not include the right to use any Work, or Artist's name or likeness (or other personal indicia), for any the following purposes: (i) the advertising or promotion of any third-party product, service or brand; (ii) merchandising; (iii) third-party syndication and/or licensing other than as expressly permitted herein or as otherwise agreed; (iv) any anthology, book, collection, portfolio, exhibition or similar publication or project in which photographs by A1tist comprise fo1ty percent (40%) or more of the photographs (and/or artworks) included therein; or (v) any usage or exploitation unrelated to any of the Publications and/or Company (i.e., the CONDÉ NAST brand). (Duff Decl. ¶¶ 7-10, Ex. E, at 11, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.)

"[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). "In an exclusive license, the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others." *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996), *Citing Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). Moreover, a "nonexclusive license, does not transfer ownership of the copyright to the licensee. The copyright owner simply permits the use of a copyrighted work in a particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996). Condé Nast has explicitly not been granted any rights or license in regards to the commercial, advertising, or promotional use of the Images. If they have no license, whether exclusive or non-exclusive, then there is nothing in the Condé Agreements that would interfere with Trunk Archive's rights under the Artist Agreement.

As such, the Commercial/Advertising Clause in the Condé Agreements must be treated as a covenant and not a condition to the Condé Agreements as a whole. "Importantly, copyright law is clear that a licensee's breach of a covenant in a copyright license does not rescind the authorization to use the copyright work, but rather provides the licensor with a cause of action for a breach of contract". See *Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2013 U.S. Dist. LEXIS 90602 (M.D. Fla. June 27, 2013), See also *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998); *Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 233-34 (E.D.N.Y. 2007); see *also Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753-54 (11th Cir. 1997) (breach of a covenant in a copyright

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

license does no more than provide licensor an opportunity to seek rescission of the license, but does not constitute an ab initio rescission of the licensee's permission to use a copyrighted work); *Edgenet, Inc. v. Home Depot U.S.A., Inc*., 2010 U.S. Dist. LEXIS 2276, 2010 WL 148389, at *6 (E.D.Wis. Jan. 12, 2010) (quoting and relying on *Graham* ); *RT Computer Graphics, Inc. v. U.S.*, 44 Fed.Cl. 747, 756-57 (Fed.Cl.1999) (same). If Leibovitz were to violate the Commercial/Advertising Clause, Condé would not be able to pursue any third parties who may have been granted a license, because Condé Nast is not an exclusive licensee, or any licensee at all for that matter, as it pertains to the commercial, advertising, or promotional use of the Images. Condé Nast would only be able to pursue Leibovitz for a breach of contract related to the Condé Agreements.

The nonmoving party meets its burden by producing specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Here, the undisputed fact that Condé Nast explicitly does not have any commercial, advertising, or promotional use of the Images easily meets Plaintiffs burden to produce material to show that there is a genuine issue for trial.

Because a genuine issue of material fact to whether the Condé Agreements granted Condé a license regarding the commercial, advertising, and promotional use of the Images, summary judgment should be denied.

**C. The Court's Finding and Recommendation, the Order Adopting the Finding and Recommendations, and the Judgment in the Oregon Action Were All Vacated and Therefore Do Not Exist In The Eyes of The Court.**

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Ibid*. The nonmoving party meets its burden by producing specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1).

Defendant presented several facts regarding the Oregon Action that Plaintiff has not disputed. However, Defendant has deliberately failed to provide the most important undisputed fact as to the Oregon Action. First, following a judgment entered against Plaintiff Trunk Archive, Trunk

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Archive moved for an appeal to the 9th Circuit Court of Appeals (Suppl. Murray Decl. ¶5, *See Great Bowery, Inc. v. Cascade Digit. Media, LLC*, 2022 U.S. App. LEXIS 22039.). Second, during pendency of appeal the Parties in the Oregon Action reached a confidential settlement agreement and the Court's Findings and Recommendation, the Order Adopting the Finding and Recommendations, and the Judgment, were vacated in their entirety. (Suppl. Murray Decl. ¶6-8, Exhibit A, *Great Bowery Inc. v. Cascade Digital Media LLC,* No. 6:20-cv- 00009-MK (D. Or. Jan. 2, 2020), ECF No. 46.).

But a vacated opinion or order is "officially gone". *Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870 (11th Cir. 2019), *citing United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002). That is, a vacated opinion has "no legal effect whatever. [It is] void." *Id*. "None of the statements made [therein] has any remaining force[.]" *Id*. Stated differently, "a general vacat[ur] . . . vacates the entire judgment below, divesting the lower court's earlier judgment of its binding effect." *United States v. M.C.C. of Fla., Inc*., 967 F.2d 1559, 1561 (11th Cir. 1992). See also *Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ("The judgment of the district court was vacated; thus, no final judgment on the merits exists.").

Defendants are essentially presenting the existence of the Oregon Action as proof that Trunk Archive does not have standing in the current claim. In order for Defendants to prevail "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). The fact that Report and Recommendation, the Order Adopting the Report and Recommendation and the Judgment itself in the Oregon Action were all vacated clearly creates a genuine issue of material fact as to the use of the Oregon Action as some sort of "gotcha" on the issue of standing.

The nonmoving party meets its burden by producing specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Plaintiff has provided facts and evidentiary material to show there is a genuine issue for trial as to the use of the Oregon Action as the basis for Defendant's standing argument. Moreover, even if the decision were not vacated, the Oregon Action involved two Annie Leibovitz photographs that are not subject to the current action. (Supplemental Declaration of Taryn R. Murray ¶4, ("Suppl. Murray Decl.") Duff Decl. ¶ 16, Ex. M, at 6-7; Compl. at 5-7, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv-00009-MK (D. Or. Jan. 2, 2020), ECF No. 1.).

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Thus, summary judgment must be denied.

## IV.     CONCLUSION

In conclusion, Plaintiff Great Bowery Inc. d/b/a Trunk Archive respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety.

DATED: May 24, 2024                                     Respectfully submitted,

**s/ Taryn Rose Murray**
Taryn Rose Murray, Esq.
*Admitted Pro Hac Vice*
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*


**/s/ Melissa A. Higbee**
Melissa A. Higbee, Esq.
State Bar No. 62465
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I certify that Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment has been served on all parties who have appeared in this case by using the Court's CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record listed with the Clerk of the Court.

*/s/ Taryn R. Murray*
Taryn R. Murray