Melissa Higbee, SBN 62465
Taryn R. Murray, *Pro Hac Vice*
HIGBEE & ASSOCIATES
1504 Brookhollow Drive, Suite #112
Santa Ana, CA 92705
(714) 617-8373
mh@higbee.law
tmurray@higbee.law
*Attorneys for Plaintiff Trunk Archive*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GREAT BOWERY INC d/b/a TRUNK ARCHIVE,<br><br>       Plaintiff,<br><br>v.<br><br>CONSEQUENCE SOUND LLC, CONSEQUENCE MEDIA GROUP INC., and DOES 1 through 10 inclusive,<br><br>       Defendants. | Case No. **9:23-cv-80488**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

I.     SUMMARY JUDGMENT STANDARD ................................................................... 1

II.    Leibovitz is Able to Retain Rights to Her Copyrighted Work Without
       Destroying Plaintiff's rights as the Exclusive Licensee Under
       Copyright's Divisibility Principles ...................................................................... 1

III.   The Artist Agreement Conveyed the Exclusive 17 U.S.C. §106 Right to Distribute,
       Reproduce, and Display the Star Wars Photographs to Trunk Archive ..................... 5

IV.    Defendant Has Failed To Overcome the Undisputed Facts as to Leibovitz'
       Intent to Grant Trunk Archive Exclusive § 106 Rights in the Artist Agreement ........ 8

V.     The Condé Nast Agreements Do Not Prevent Plaintiff From Receiving
       any of the Exclusive §106 Rights ...................................................................... 11

       1.   AL Studio does not have any rights to the Star Wars Photographs ..................... 11

       2.   The Conde Agreements Do Not Effect Plaintiff's Exclusive § 106 Rights ............. 12

            a.   Condé Nast's only exclusive right was the right of first publication .......... 12

            b.   Condé Nast's nonexclusive rights are expressly limited. ............................ 14

       3.   The Conde Agreement's limitations on commercial, merchandising,
            and advertising uses is a contractual covenant not a condition of the licenses
            granted by Annie Leibovitz to Conde Nast for use of the Images. ........................ 16

VI.    The Court's Finding and Recommendation, the Order Adopting the
       Finding and Recommendations, and the Judgment in the Oregon Action
       Were All Vacated and Are Therefore Do Not Exist In The Eyes of The Court .......... 18

VII.   Defendant CS Does Not Contest The Theory of Liability Or Arguments
       Against Its Affirmative Defenses ....................................................................... 19

VIII.  CONCLUSION ................................................................................................. 20

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

## TABLE OF AUTHORITIES

**STATUTES**

17 U.S.C. § 101................................................................................................1, 6, 7, 13

17 U.S.C. § 106................................................................................................3, 5, 7, 8
11-14, 20

17 U.S.C. § 106(1).......................................................................................................6

17 U.S.C. § 106(3)................................................................................................6, 7, 8

17 U.S.C. § 106(5)...................................................................................................7, 8

17 U.S.C. § 201(d)(11)..................................................................................................9

17 U.S.C. § 204..........................................................................................................20

17 U.S.C. § 204(a)................................................................................................8, 9, 20

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56(a) ................................................................................................8, 19

Fed. R. Civ. P. 56(c)(1)....................................................................................1, 5, 8, 9, 19

**CASES**

**U.S. Supreme Court**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986) ........................9-15, 18, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)......................................1, 10-15, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp* 4
75 U.S. 574, 587 (1986).......................................................................1, 5, 8, 19

**2nd Circuit Court of Appeals**

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*,
697 F.2d 27, 36 (2nd Cir.1982).......................................................................9

*Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) ..............................17

*W. Elec. Co. v. Pacent Reproducer Corp.*,
42 F.2d 116, 119 (2d Cir. 1930).......................................................................2

**7th Circuit Court of Appeals**

*Hyperquest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377 (7th Cir. 2011).............2, 15

*I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996) ......................................7, 17

**9th Circuit Court of Appeals**

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

*Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991) ........................2

*Corbello v. DeVito*, 777 F.3d 1058, 1064 (9th Cir. 2015) ...........................2

*DRK Photo v. McGraw-Hill Global Education Holdings, LLC*,
870 F.3d 978, 983 (9th Cir. 2017) ................................................................8, 13

*Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). ..............................17

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958, 965 (9th Cir. 2010) ..............................................................7, 13, 17

*Great Bowery, Inc. v. Cascade Digit. Media, LLC*,
2022 U.S. App. LEXIS 22039 ....................................................................18, 19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 7
95 F.3d 997, 1003 (9th Cir. 2015) ..............................................................2-4, 6-8, 15

*Silvers v. Sony Pictures Entm't, Inc*., 402 F.3d
881, 884, 890 (9th Cir.2005)........................................................................1

**10th Circuit Court of Appeals**

*Country Kids 'N City Slicks, Inc. v. Sheen*, 77
F.3d 1280, 1284 (10th Cir. 1996) ................................................................6

**11th Circuit Court of Appeals**

*Borden v. Katzman*, 881 F.2d 1035 (11th Cir. 1989)....................................13

*Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*,
70 F.3d 96 (11th Cir.1995) ..........................................................................9

*Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753-54 (11th Cir. 1997) .........17

*Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ................................19

*Midlevelu, Inc. v. ACI Info. Grp., 989 F.3d 1205* (11th Cir. 2021). .............5

*Rose v. M/V "GULF STREAM FALCON"*,
186 F.3d 1345, 1350 (11th Cir. 1999). ........................................................9

*Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ........13

*United States v. M.C.C. of Fla., Inc*.,
967 F.2d 1559, 1561 (11th Cir. 1992) .........................................................19

*United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002)......18

*Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870 (11th Cir. 2019) .............18

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

**U.S. Court of Federal Claims**

*RT Comput. Graphics, Inc. v. United States*, 44 Fed. Cl. 747 (1999)............17

**California District Courts**

*Nafal v. Carter,* 540 F. Supp. 2d 1128 (C.D. Cal. 2007)..............................15

*Shapiro, Bernstein & Co. v. Bleeker*, 224 F. Supp. 595 (D.C.Cal. 1963)......14

**Colorado District Courts**

*Viesti Assocs. v. McGraw-Hill Glob. Educ. Holdings, LLC* Civil Action
No. 12-cv-00668-WYD-DW, 2015 U.S. Dist. LEXIS 16601
(D. Colo. Feb. 11, 2015) ................................................................................3

**Florida District Courts**

*Applied Concepts Unleashed, Inc. v. Matthews*, 2012
U.S. Dist. LEXIS 195153  (S.D. Fla.)..........................................................9-11

*Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2013
U.S. Dist. LEXIS 90602 (M.D. Fla. June 27, 2013)......................................17

*Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*,
773 F. Supp. 2d 1288 (M.D. Fla. 2011).........................................................6

*Playboy Enters. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993)...................7

*Prof'l Led Lighting, Ltd. v. Aadyn Tech., LLC*,
88 F. Supp. 3d 1356 (S.D. Fla. 2015) ..........................................................13

**George District Courts**

*Creative Photographers, Inc. v. Julie Torres Art, LLC*,
No. 1:22-CV-00655-JPB, 2023 U.S. Dist. LEXIS 41343 (
(N.D. Ga. Mar. 13, 2023)...........................................................................4, 13

*Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co*
679 F. Supp. 1564 (N.D. Ga. 1987)..............................................................3, 4

**New York District Courts**

*Atlantis Info. Tech. v. CA, Inc.*,
485 F. Supp. 2d 224, 233-34 (E.D.N.Y. 2007)..............................................17

**Oregon District Courts**

*Great Bowery Inc. v. Cascade Digital Media LLC*,
No. 6:20-cv- 00009-MK (D. Or. Jan. 2, 2020) .............................................18

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

**Tennessee District Courts**

*Great S. Homes, Inc. v. Realtors*,
797 F. Supp. 609 (M.D. Tenn. 1992)................................................................9

**Wisconsin District Courts**

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 2010 U.S. Dist.
LEXIS 2276, 2010 WL 148389, at *6 (E.D.Wis. Jan. 12, 2010) .................17

**Florida Supreme Court**

*Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc.*,
50 So.2d 120, 122 (Fla. 1951).....................................................................9, 11

## <u>TREATISES</u>

2 Roger M. Milgram, *Milgram on Licensing § 15.08*................................................7

Robert W. Gomulkiewicz et al., *Licensing Intellectual Property: Law and
Application* 4 (2d ed. 2011) ................................................................................2

## <u>JOURNALS AND LAW REVIEWS</u>

Christopher M. Newman*, A License Is Not a "Contract Not To Sue"*:
*Disentangling Property and Contract in the Law of Copyright Licenses*
98 Iowa L. Rev. 1101........................................................................................5

Roger D. Blair & Thomas F. Cotter, *The Elusive Logic of Standing Doctrine
in Intellectual Property Law*, 74 Tul. L. Rev. 1323, 1347 (2000)...............2, 15

## <u>DICTIONARIES</u>

*License, Black's Law Dictionary* (11th ed. 2019) ....................................................5

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

<u>MEMORDANDUM OF POINTS AND AUTHORITY</u>

## I.      SUMMARY JUDGMENT STANDARD

In their Response and Opposition to Plaintiff Great Bowery Inc d/b/a Trunk Archive's ("Plaintiff" or "Trunk Archive") Motion for Summary Judgment, Defendants Consequence Media Sound LLC and Consequence Media Group Inc ("Defendants") have failed to produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). ).The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need only point to the absence of evidence proffered by the non-moving party. *Id.* Plaintiff has met its burden and shown that no dispute of material fact exists. Defendant has not presented specific facts, by affidavit or other evidentiary materials to show there is a genuine issue for trial. As such, Plaintiff requests that summary judgment be entered in its favor.

## II.     Leibovitz is Able to Retain Rights to Her Copyrighted Work Without Destroying Plaintiff's Rights as the Exclusive Licensee Under Copyright's Divisibility Principles.

Defendant incorrectly asserts that Plaintiff was not conferred an exclusive license and therefore standing because photographer Annie Leibovitz ("Leibovitz") retains the ability to use copyrighted material conveyed to Plaintiff under the Artist Agreement. Defendant's arguments ignore the divisibility principles at the heart of copyright law.

The Copyright Act permits the copyright owner to subdivide his or her interest in what otherwise would be a wholly owned "exclusive right" by authorizing the owner to transfer his or her share, "in whole or in part," to someone else. 17 U.S.C. § 201(d)(11). It specifies that the owner can transfer a right, *or a share of such a right*, via "an assignment, . . . exclusive license, or any other conveyance,  . . . whether or not it is limited in time or place of effect." *Id*. § 101. In *Silvers v. Sony Pictures Entm't Inc*, the Court, after analyzing the legislative intent of the Copyright Act as it pertains to the division of rights, stated "exclusive rights may be chopped up and owned separately, and *each separate owner of a subdivided exclusive right may sue to enforce that owned portion of an exclusive right, no matter how small*." 402 F.3d 881 (9th Cir. 2005)(emphasis added) Moreover, "the statute does not say expressly that only a legal or beneficial

1

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

owner of an exclusive right is entitled to sue. But, under traditional principles of statutory interpretation, Congress' explicit listing of who may sue for copyright infringement should be understood as an exclusion of others from suing for infringement. The doctrine of *expressio unius est exclusio alterius* "as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." *Id.* Citing to *Boudette v. Barnette*, 923 F.2d 754, 756-57 (9th Cir. 1991).

In *Minden Pictures, Inc v. John Wiley & Son Inc*, despite Defendant's attempts to distinguish this case from the matter at hand, is analogous to the situation we found ourselves in here. In *Minden,* John Wiley & Sons argued that because the photographers retained the ability to license their photographs themselves, the licensing agency did not have an exclusive license and therefore had no standing to bring suit. The Court disagreed with this logic " This argument runs contrary to the divisibility principle embodied by the 1976 Act, and to the bulk of the caselaw and commentary in this field. Wiley's argument is inconsistent with the notion that, under the 1976 Act, a single copyright, or right thereunder, may be divided between parties, with each co-owner entitled to sue to protect his or her interest in the right. As we recently explained in the context of copyright ownership, "the word 'exclusive' in [the Act] cannot mean that only sole owners possess 'exclusive' rights." *Corbello*, 777 F.3d at 1065. "If an 'exclusive right' could only be possessed by a sole owner of a copyright, a co-owner would be unable to bring an infringement action to protect his interest." *Id.*

The Court went even further:  "We see no reason why the divisibility principle should not apply with equal force when the interest granted is an exclusive license to grant licenses to others. The reason the Act prevents a holder of a "nonexclusive license" to use a copyrighted photograph from bringing an infringement action against others who use the same photograph is that such a licensee has no more than "a privilege that protects him from a claim of infringement by the owner" of the copyright. *W. Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 119 (2d Cir. 1930); *see* Roger D. Blair & Thomas F. Cotter, *The Elusive Logic of Standing Doctrine in Intellectual Property Law,* 74 Tul. L. Rev. 1323, 1347 (2000). That is, because such a licensee has been granted rights only vis-à-vis the licensor, not vis-à-vis the world, he or she has no legal right to exclude others from using the copyrighted work, and thus no standing to bring an infringement suit. See *Hyperquest*, 632 F.3d at 385; Blair & Cotter, supra, at 1347. ***But when a licensee has been granted rights vis-à-vis the world — even if he or she shares those rights with another party, including***

2

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*the owner of the copyright — we see nothing in the Copyright Act that requires us to deem such an arrangement a mere "nonexclusive license" insufficient to give rise to standing to sue.* (emphasis added)" *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015)

Thus, Leibovitz is able to retain rights as the copyright holder and Trunk Archive would still be considered the exclusive licensee because the copyright holder, in this case, Leibovitz, can subdivide her copyright interest and may deem some of those subdivisions "exclusive" and each owner of an exclusive subdivision may enforce their exclusive right. Defendant relies on several cases that are either distinguishable or not relevant to the facts at hand in order to argue that Leibovitz and Trunk Archive, despite testimony to their intent, did not enter into an exclusive license. Each case is addressed below:

In *Viesti Assocs. v. McGraw-Hill Glob. Educ. Holdings, LLC*, the Court recognized that the agent lacked standing to bring suit. However, the underlying agreement in which the agent was attempting to bring suit explicitly said "Viesti agrees to reassign all copyrights and complete legal title back to the undersigned immediately upon resolution of infringement claims brought by Viesti relating to the Images.". Civil Action No. 12-cv-00668-WYD-DW, 2015 U.S. Dist. LEXIS 16601 (D. Colo. Feb. 11, 2015) Viesti and the photographers executed several follow up agreements that further related solely to the right to sue as a means to establish standing. *Id.* The language of the agreement in *Viesti* clearly indicates that the agent was only to have title to the copyrighted material insofar as they were pursuing infringement claims for the photographers. That is not the case here, as Trunk Archive was granted the "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media.". (ECF 31-1, Leibovitz Decl. ¶39, Exhibit 29 ¶1).

In *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co*, the issue was not the license between the plaintiff and the defendant but the subject matter that they brought the infringement claim for. In *Original Appalachian*, the parties to the suit entered into a licensing agreement for licensing and distribution rights to "Cabbage Patch Kids" dolls. Schlaifer Nance & Co filed a copyright infringement counterclaim against Original Appalachian alleging that they held a copyright in "Furskin bears", which they claim derived from the Cabbage Patch Kids property, under their original licensing agreement. However, in this case, the argument effectively turned on whether the rights granted in the Cabbage Patch Kids property transferred to the "Furskin bears" property. Specifically, "SN&C argues that the contract between Coleco and OAA which

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

granted a license to Coleco for the manufacture and sale of Furskins bears constitutes an infringement of SN&C's exclusive licensing rights of the Cabbage Patch Kids property, which SN&C claims is protected by section 501(a). As an underpinning for this argument SN&C claims that Furskins bears are "derived from" the Cabbage Patch Kids property. SN&C asserts that it, therefore, has the same exclusive rights in Furskins that it has in Cabbage Patch Kids.".679 F. Supp. 1564 (N.D. Ga. 1987). The Court found that the claim alleged in regard to the Furskin did not vest under copyright, but under contract law. Thus, it was not the language of the contract between the parties that the Court's standing decision hinged on, but whether they had a copyright in the "Furskins" under those terms, as the Furskins were not the subject matter under the original agreement.  Therefore, this case is not relevant and does not set any precedent that would affect Plaintiff Trunk Archive's standing.

Finally, Defendant claims that the language of the agreement in *Creative Photographers* shows that Trunk Archive was not conferred standing because the agreement in Creative Photographers only made the plaintiff in that case the "exclusive agent.". The language in the Creative Photographer's does only convey an exclusive agency contract because it explicitly states ***"You retain [Plaintiff] as your exclusive agent*** to sell, syndicate, license, market or otherwise distribute any and all celebrity/portrait photographs and related video portraits...". *Creative Photographers, Inc. v. Julie Torres Art, LLC*, No. 1:22-CV-00655-JPB, 2023 U.S. Dist. LEXIS 41343 (N.D. Ga. Mar. 13, 2023)(emphasis added). There is no license explicitly granted and the agreement clearly ties the exclusivity to the plaintiff's title as "agent", but not to a right under 17 U.S.C. § 106. Defendant presents this case as some sort of "gotcha", when the language of the agreement is clearly at odds with the Artist Agreement executed by Leibovitz and Trunk Archive. Trunk Archive was not contracted to be Leibovitz' "exclusive agent", rather, Trunk Archive was granted "the exclusive worldwide right to license, market, and promote the Licensed Images … for all uses in any and all media.". (ECF 31-1, Leibovitz Decl. ¶39, Exhibit 29 ¶1). *Creative Photographer* also cites to *Minden* and acknowledges that the difference between *Minden* and *Creative Photographer* is that "it seemed fairly clear that the agency agreements constituted some kind of license; the analysis hinged on whether that license was exclusive or nonexclusive. *Id*. at 1004. Here, though, while the Agreement certainly makes Plaintiff an exclusive agent to perform for Afanador certain functions, the Court does not agree with Plaintiff that the Agreement, on its face, constitutes an exclusive license.". No. 1:22-CV-00655-JPB, 2023 U.S. Dist. LEXIS 41343

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

(N.D. Ga. Mar. 13, 2023). Thus, Defendant's arguments remain unpersuasive as they attempt to apply case law that is not analogous with the Artist Agreement.

Defendant has failed to produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1).

III.     **The Artist Agreement Conveyed the Exclusive 17 U.S.C. §106 Right to Distribute, Reproduce, and Display the Star Wars Photographs to Trunk Archive.**

Defendant contends that no §106 rights were conveyed under the Artist Agreement because the "right to license" is not a § 106 right. Defendant's arguments essentially say that because § 106 rights are not explicitly conferred, Plaintiff does not have any rights and therefore does not have standing to sue. Defendant is patently and blatantly wrong.

First, the "exclusive world right to license, market, and promote" the Star Wars Photographs necessarily conveys § 106 rights just by virtue of the fact that in order to hold a worldwide and exclusive right to license, the licensee would need to possess at least the exclusive right to reproduction, display, and distribution. A license is "[a] permission . . . to commit some act that would otherwise be unlawful." *License, Black's Law Dictionary* (11th ed. 2019); *see* Robert W. Gomulkiewicz et al., *Licensing Intellectual Property: Law and Application 4 (2d ed. 2011)* ("A 'license' is a grant of permission."); see generally Christopher M. Newman*, A License Is Not a "Contract Not To Sue": Disentangling Property and Contract in the Law of Copyright Licenses*, *Midlevelu, Inc. v. ACI Info. Grp., 989 F.3d 1205* (11th Cir. 2021). By definition – a license is a grant of permission – Leibovitz has granted Trunk Archive an exclusive license to license her Star Wars Photographs, as well as to market and promote them, which would also require they possess the exclusive right to display the Star Wars Photographs. In order to license her Photographs, Trunk Archive necessarily has the exclusive right to reproduce the Star Wars Photographs, to distribute copies of the Star Wars Photographs, and to display the Star Wars Photographs.

Further, in a case where this exact issue came up with Plaintiff Trunk Archive, the Court stated that "If a copyright owner by definition has an exclusive right over all Section 106 subsets, and granting an exclusive license means for purposes of the statute transferring copyright ownership, then a party has a full set of exclusive rights when that party receives an exclusive license." *Great Bowery v. Best Little Sites*, 671 F. Supp. 3d 1297 (D. Utah 2023). Defendant attempts to downplay the Court's decision here by simply stating that it "was wrong". (ECF

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

40 at 9). Defendant offered no other explanation. Ironically, Defendant asks the Court to review a case with "substantially similar facts" later on its Opposition, but fail to inform the Court that the case with "substantially similar facts" was vacated and therefore no precedential. So, Defendant essentially asks the Court to ignore one decision that involved the current Plaintiff because it was "wrong" but would have the Court throw out well established law and use a vacated decision as legal precedent. *See* Section VI, below.

**17 U.S.C. § 106(1)**. Trunk Archive was granted the "exclusive worldwide right to license, market, and promote" which includes the exclusive right to "reproduce the copyrighted work in copies or phonorecords". The Copyright Act defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.". 17. U.S. C. § 101. The "right to reproduce a copyrighted work" means the right to produce a material object in which the copyrighted work is duplicated, transcribed, imitated, or simulated in a fixed form from which it can be "perceived, reproduced or otherwise communicated either directly or with the aid of a machine or device. *Dream Custom Homes, Inc. v. Modern Day Constr., Inc*., 773 F. Supp. 2d 1288 (M.D. Fla. 2011) citing to *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996). In order to be able to grant the license necessary for a third party to reproduce the Star Wars Photographs, Trunk Archive is required to have the exclusive right of reproduction in order to permit or authorize the creation of copies. In *Minden*, the Court found that Minden, as the photographer's licensing agent, "had the right "to authorize" both the distribution and the display of the photographs by granting licenses to third parties such as Wiley.  The right "to authorize" these acts is also an "exclusive right" under the Act. *See id.* § 106(3), (5).".

**17 U.S.C. § 106(3).** Trunk Archive was granted the "exclusive worldwide right to license, market, and promote" which includes the exclusive right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending". In order to "license" the Star Wars Photographs, Trunk Archive is required to have the exclusive right to distribute the work under 17. U.S.C. § 106 as they are literally distributing copies of the Star Wars Photographs "by sale or other transfer of ownership, or by rental, lease, or

lending".

**17 U.S.C. § 106(5).** Trunk Archive was granted the "exclusive worldwide right to license, market, and promote" which includes the exclusive right to "display the copyrighted work publicly". The Copyright Act defines "display" as the right "to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially.' 17. U. S. C. § 101. "Display" covers any showing of a "copy" of the work, "either directly or by means of a film, slide, television image or any other device or process." 17 U.S.C. § 101. Courts in this Circuit have found that "any right to reproduce/distribute a "copy" necessarily also conveys a right to display the work." *Playboy Enters. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993).

In *Minden*, the Court found that Minden, as the photographer's licensing agent, "had the right "to authorize" both the distribution and the display of the photographs by granting licenses to third parties such as Wiley. The right "to authorize" these acts is also an "exclusive right" under the Act. *See id.* § 106(3), (5).", The Court goes even further and states, "one who takes an 'exclusive' license subject to a preexisting license may lack true exclusivity, but nonetheless possesses the legal right to exclude third parties (other than the existing licensee) . . . and, thus, has . . . standing to sue for infringement." 2 Roger M. Milgram, *Milgram on Licensing § 15.08*. Put more simply, we agree with the Seventh Circuit that the essence of an "exclusive" license under the Act is that "the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). The Court explicitly states "the Agency Agreements convey the rights to reproduce, distribute, and display the photographs to Minden via an "exclusive license" to grant licenses to third parties.

Thus, despite Defendant's contentions that no §106 rights were conveyed to Trunk Archive via the Artist Agreement, the grant of rights in the Artist Agreement, "exclusive worldwide right to license, market, and promote", necessarily convey the exclusive right to distribute, reproduce, and display the Star Wars Photographs. "[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). Either an *assignment* (which transfers legal title to the

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in copyright for purpose of the Act." *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (quoting *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015). The right "to authorize" these acts is also an "exclusive right" under the Act. § 106(3), (5). ("the owner of copyright under this title has the exclusive rights ***to do and to authorize*** any of the following")(emphasis added). Because the § 106 rights are divisible, Leibovitz can assign her right in that ability to authorize third parties to use her copyrighted materials to Trunk Archive, which is what she has done here, and as explained above in Section II, Leibovitz, as the copyright holder, can retain some of those rights, and Trunk Archive can still maintain exclusivity over those rights.

Moreover, the Artist Agreement specifically states that it pertains to images "to which the Artist [Leibovitz] holds the copyright or reproduction rights." Further evidencing that the license granted to Trunk Archive was for the rights included under copyright law (i.e. the rights enumerated under 17 U.S.C. § 106) and even more specifically the reproduction right. (*See* ECF 31-1, Leibovitz Decl. ¶39, Exhibit 29). Further, Defendants incorrectly assert that Plaintiff is not mentioned in any of the copyright registrations associated with the Star Wars Photographs. (*See* ECF 40 at 3). Plaintiff Trunk Archive is listed in VA 2-192-380 under "Rights and Permissions". (ECF 33-1, Duff Decl. ¶5, Exhibit C).

In conclusion, Defendant has failed to produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Plaintiff has established that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). Therefore, summary judgment should be entered as to Plaintiff's standing.

**IV.    Defendant Has Failed To Overcome the Undisputed Facts as to Leibovitz' Intent to Grant Trunk Archive Exclusive 106 Rights in the Artist Agreement.**

The 11th Circuit has held "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. Therefore, we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to

8

invoke section 204(a) to avoid suit for copyright infringement. *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96 (11th Cir. 1995) See also *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2nd Cir.1982). Defendant attempts to distinguish these cases on the basis that the conveyance in *Imperial Residential Design* hinged on an oral agreement later ratified and the fact that the copyright holder also joint the lawsuit and that Eden Toys was related to a pre-1978 agreement. Neither of these distinctions changes the effect of the Court's holding regarding the intention of the parties "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.". Moreover, Court did not indicate that the original owner and the transferee were required to join suit, only that " in a case such as this one--where both the original owner and the transferee have joined as plaintiffs in the same lawsuit--we will not let the alleged infringer invoke section 204(a). *See Great Southern Homes,* 797 F. Supp. at 611." Further, Section 204(a) applies to all conveyances, not just oral conveyance later ratified in writing. 17 U.S.C. § 204(a).

It is well settled in this Circuit "the actual language of the contract is the best evidence of the intent of the parties." *Rose v. M/V "GULF STREAM FALCON*", 186 F.3d 1345, 1350 (11th Cir. 1999). Under Florida law, when interpreting whether a license granted in writing is exclusive or non-exclusive, the court must interpret the contract "***reasonably to give effect to the plain intention of the parties*** as adduced from the whole agreement, its nature, their situation, and the objects they had in view in making it.", *Applied Concepts Unleashed, Inc. v. Matthews*, 2012 U.S. Dist. LEXIS 195153  (citing *Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc*., 50 So.2d 120, 122 (Fla. 1951)) (emphasis added).

Defendants essentially argues that there is a dispute of fact as to the rights granted to Trunk Archive by Leibovitz in the Artist Agreement which therefore effects their standing to sue for copyright infringement for Defendant's unauthorized use of the Star Wars Photographs. As the non-moving party, Defendants "need only produce specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). Given that Defendants are fundamentally relying on contract interpretation as to create a dispute of fact, they are required to present evidence that shows there is a "genuine issue for trial that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,248 (1986).

Defendants have not done that. Florida law, and the law of this District specifically, is clear that when interpreting licensing contract, the court must interpret the contract "***reasonably to give effect to the plain intention of the parties*** as adduced from the whole agreement, its nature, their situation, and the objects they had in view in making it.", *Applied Concepts Unleashed, Inc. v. Matthews*, 2012 U.S. Dist. LEXIS 195153 (S.D. Fla)  (citing *Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc*., 50 So.2d 120, 122 (Fla. 1951)) (emphasis added).

Plaintiff, as the moving party, bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need only point to the absence of evidence proffered by the non-moving party. *Celotex*, 477 U.S. at 325. Plaintiff had provided direct written testimony from Annie Leibovitz indicating her intention to enter into an exclusive contract with Trunk Archive: "On or about November 12, 2014, I entered into an agreement ("Artist Agreement") with Plaintiff Great Bowery Inc. d/b/a Trunk Archive for exclusive worldwide representation to license my photographs." (ECF 31-1, Leibovitz Decl. ¶39, Exhibit 29 ¶1). Further, Trunk Archive provided direct written testimony from Trunk Archive indicating their intention to enter into an exclusive contract with Annie Leibovitz: "On or about November 12, 2014, Trunk Archive entered into an agreement ("Artist Agreement") with photographer Annie Leibovitz which granted Trunk Archive the exclusive worldwide representation to license Ms. Leibovitz' photographs." (ECF 31-3, Koszta Decl. ¶ 2). Moreover, Annie Leibovitz provided direct written testimony that the Images were provided to Trunk Archive by Annie Leibovitz under the terms of the Artist Agreement following their initial publication, so that Trunk Archive could act as the exclusive licensor for the Images (ECF 31-1 Leibovitz Decl. ¶44, ¶48, ¶52). There is no genuine issue of material fact as to Leibovitz' intent to grant Trunk Archive the exclusive rights conveyed via the Artist Agreement, described above in Section III.

If this matter were to be heard before a jury, Defendants have failed to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Defendant has not provided evidence that would contradict Plaintiff's and Leibovitz' intent and a Court would be required to "***reasonably to give effect to the plain intention of the parties*** as adduced from the whole agreement, its nature, their situation, and the

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

objects they had in view in making it.", *Applied Concepts Unleashed, Inc. v. Matthews*, 2012 U.S. Dist. LEXIS 195153 (S.D. Fla)(citing *Arden Shoe Corp. v. Dr. MW. Locke Shoes of Miami, Inc*., 50 So.2d 120, 122 (Fla. 1951)) (emphasis added).

In conclusion, Defendants have failed to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need only point to the absence of evidence proffered by the non-moving party. *Celotex*, 477 U.S. at 325. Therefore, summary judgment should be entered in favor of Plaintiff.

## V. The Condé Nast Agreements Do Not Prevent Plaintiff From Receiving any of the Exclusive §106 Rights

Defendants claim that the Condé Agreements bar Plaintiff from receiving an exclusive license of any of the § 106 rights in the Images because 1) the Condé Agreements were between AL Studio and Condé Nast and there is no written conveyance from AL Studio to Annie Leibovitz or Trunk Archive and 2) because the Condé Agreements granted Condé Nast "exclusive rights" and "nonexclusive rights" for the duration of the copyright.

### 1. AL Studio does not have any rights to the Star Wars Photographs

Defendants have failed to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need only point to the absence of evidence proffered by the non-moving party. *Celotex*, 477 U.S. at 325.

Trunk Archive has provided direct written testimony from Annie Leibovitz explaining her relationship with AL Studio. Annie Leibovitz owns the business entity AL Studio LLC (ECF 33-2, Suppl. Leibovitz Decl. ¶3). AL Studio negotiates, organizes, and manages Annie Leibovitz' business contracts on her behalf as an individual. (*Id at*. ¶4). AL Studio never held the copyrights to any of the Images. (ECF 33-2, Suppl. Leibovitz Decl. ¶5, Duff Decl. ¶3-5, Ex. A, B, C.). AL Studio assists with registering Annie Leibovitz' copyrights. (ECF 33-2 Suppl. Leibovitz Decl. ¶8).

Additionally, Each of the Condé Agreements is entered into by "AL Studio, LLC ("Contributor") f/s/o Annie Leibovitz ("Artist") and includes a "Guaranty Rider" signed by Annie Leibovitz indicating her undertaking of all obligations of the Condé Agreements. (Duff Decl. ¶7-10, Ex. E at 1, 16. Ex. F at 1, 16, Ex. G at 1, 16, Ex H, at 1, 16.) Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*Contributor*" (emphasis added). (Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.) The Condé Agreements were each negotiated *for the services* of Annie Leibovitz.

Defendants present evidence of the registration certificates throughout their motion as evidence that Trunk Archive does not have exclusive rights in the Star Wars Photographs. However, the registration certificates dispute their own arguments as to AL Studios as they show a) that Annie Leibovitz is the copyright holder to the Star Wars Photographs submitted with the registration certificates and b) AL Studio was involved in the registration of the copyrights on Annie Leibovitz' behalf.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). While it is not clear if Defendants are claiming that AL Studio is the party with standing to sue in this matter, Defendants present as an undisputed fact that there was "Nothing in the record shows a documented transfer of any rights in the Images from AL Studio to Leibovitz or Great Bowery." (ECF 33-1 ¶28, Duff Decl. ¶ 18.) There is nothing in the record because AL Studio does not have any rights to the Images. Plaintiff contends that direct written testimony from Annie Leibovitz regarding her relationship with AL Studio, the Guaranty Rider that was attached to each of the Condé Agreements, and AL Studio's involvement in the registration of the copyrights in the Star Wars Photographs establishes demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Defendants have failed to provide the needed evidence.

Thus, summary judgment should be granted in Plaintiff's favor.

## 2. The Conde Agreements Do Not Effect Plaintiff's Exclusive § 106 Rights

### a. Condé Nast's only exclusive right was the right of first publication

Defendant contends that "Each of the Condé Agreements grants Condé Nast certain exclusive rights in the Images". (ECF 33-1 ¶29). Condé Nast was granted a *single* "exclusive right" under the Condé Agreements for the "exclusive first worldwide right to publish, distribute, display...or otherwise use in any manner or media in connection with the content, dissemination, or promotion of any Publication". (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 2, 6-12, Ex. F, at 2, 5-11, Ex. G, at 2, 5-11, Ex. H, at 2, 5-11.). Moreover, this "exclusive right" was limited in scope by the Condé Agreement's definition of "Publication" which defines "Publication in the context of

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

Condé Agreements as:  "*Vogue* magazine and *Vanity Fair* magazine and/or for any other publication owned, published, or licensed by or affiliated with Company, whether existing or future, and whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media not herein described" (ECF 33-2, Duff Decl. ¶ 7-10, Ex. E, at 2, Ex F, at 2, Ex. G at 2, Ex. H at 2.).

"[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). Either an *assignment* (which transfers legal title to the transferee) or an *exclusive license* (which transfers an exclusive permission to use to the transferee) qualifies as a 'transfer' of a right in copyright for purpose of the Act." *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017) (quoting *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015).

Defendants do not claim that Condé Nast is the party with proper standing to sue based on the Condé Agreements. Further, Defendants fail to provide any facts that would establish that the agreements between Condé Nast and Annie Leibovitz transferred any other exclusive rights to Condé Nast other than the right of first publication. The plain language of the Condé Agreements clearly limits any exclusivity to the single right of first publication and none of the enumerated rights listed in 17 U.S.C. § 106: "exclusive first worldwide right to publish, distribute, display...or otherwise use in any manner or media in connection with the content, dissemination, or promotion of any Publication". (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 2, 6-12, Ex. F, at 2, 5-11, Ex. G, at 2, 5-11, Ex. H, at 2, 5-11.).

Trunk Archive does not claim to have the right of first publication over the Star Wars Photographs, nor does Trunk Archive claim that the Artist Agreement granted them that right. A copyright owner has the right to sell, vend, or in any other way, to transfer ownership of a copyright or of any of the exclusive rights comprised in a copyright. *Borden v. Katzman*, 881 F.2d 1035 (11th Cir. 1989), *Citing* 17 U.S.C. § 101 (1976) (defining "transfer of copyright ownership"); *Shapiro, Bernstein & Co. v. Bleeker*, 224 F. Supp. 595 (D.C.Cal. 1963). Because 'only the legal or beneficial owner of an "exclusive right" has standing to bring a copyright infringement action' under the Copyright Act." *Pro. LED Lighting*, 88 F.Supp.3d at 1369 (quoting *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290–91 (11th Cir. 2011)); see also *Creative Photographers*, 2023 WL 2482962,

at *3 (citation omitted).

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Defendants have failed to provide the needed evidence to establish a genuine issue of material fact as they have not shown that Conde Nast was granted any of the § 106 Exclusive Rights that would interfere with Plaintiff's exclusive rights or that Condé Nast's exclusive right to first publication interfered with Plaintiff's rights as the exclusive worldwide licensor. Thus, summary judgment should be entered in favor of Plaintiff.

### b. Condé Nast's nonexclusive rights are expressly limited.

Defendants claim that because AL Studio granted an "unrestricted right" to use the Star Wars Photographs "for any purpose at any time" for the "full term of the copyright" and thus Trunk Archive does not have an exclusive license:

> "grants [Condé Nast], for the full term of copyright, the non-exclusive right to Publish, print, re-Publish, and reprint the [Images] (including in anthologies as permitted below), the unrestricted right to use any cover containing any [Image](s) as a cover (i.e., in the original cover layout) for any purpose at any time, the right to make and authorize the making of reprints or stand-alone copies of the article feature including any [Image](s) for any purpose, the right to authorize the use of any [Image](s) in the original layout shown in the applicable Publication as set dressing or props in movies, television shows, and other productions, and in addition, the right to use any [Image](s) . . . in Publishing, promoting, advertising and publicizing the Publication(s) in which the [Image](s) appear." (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 10, Ex. F, at 10, Ex. G, at 10, Ex. H, at 9, 10.)

However, Defendants have failed to recognize that the Parties in the Condé Nast agreement specifically limited Condé Nast's "unrestricted right" to the "Publications" defined in the Condé Agreements. Each of the Condé Agreements defines "Publication" as "Vogue magazine and Vanity Fair magazine and/or for any other publication owned, published, or licensed by or

affiliated with Company, whether existing or future, and whether the format of delivery is print, website, app (mobile, tablet, desktop, or otherwise), television, or other media not herein described" (ECF 33-2, Duff Decl. ¶ 7-10, Ex. E, at 2, Ex F, at 2, Ex. G at 2, Ex. H at 2.)

"A license is nonexclusive because "[t]he copyright owner simply permits the use of a copyrighted work in a particular manner.". When the owner conveys a nonexclusive license to one person, the owner still has the power to do precisely the same thing for everyone else in the world. A license is exclusive not simply when one individual or entity is given the right to use a copyright, but only because the owner promises not to convey that right to anyone outside of those persons or entities who have an interest in the license." *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007). Further, as an explicitly named non-exclusive licensee, "such a licensee has been granted rights only vis-à-vis the licensor, not vis-à-vis the world, he or she has no legal right to exclude others from using the copyrighted work, and thus no standing to bring an infringement suit". *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997 (9th Cir. 2015) *Citing Hyperquest*, 632 F.3d at 385; *Blair & Cotter*, supra, at 1347.

Here, the definition of "Publication" directly disputes Defendants' claim that Condé Nast's rights under the Condé Agreements would coexist and therefore interfere with the rights granted to Trunk Archive by Annie Leibovitz in the Artist Agreement. Annie Leibovitz has granted Condé Nast the non-exclusive right to use the Star Wars Photographs in the specifically named Publications for the duration of the copyright. Condé Nast has no legal right under copyright law to exclude others from using the Images or grant third parties licenses in the Star Wars Photographs and thus does not effect Trunk Archive's rights as the exclusive licensor in the Star Wars Photographs.

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Defendants fail to provide any evidence or facts that show that Trunk Archive's exclusive right to grant third parties licenses in the Images would be at all effected by Condé Nast's pre-

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

existing non-exclusive right to use the Images within the context of their "Publications".

Thus, summary judgment should be entered in favor of Plaintiff.

3. **The Condé Agreement's limitations on commercial, merchandising, and advertising uses is a contractual covenant not a condition of the licenses granted by Annie Leibovitz to Condé Nast for use of the Images.**

Plaintiff acknowledges that it is an undisputed fact that AL Studio "will not allow any of the [Images] that are Published in a Publication, or any Works similar to such [Images], to be used for any commercial, merchandising, or advertising purpose . . . unless [AL Studio] first obtains [Condé Nast's] written consent, which [Condé Nast] may withhold in its sole discretion. This requirement will continue to apply . . . as long as [AL Studio] and [Condé Nast] still have a professional contractual relationship." (the "Commercial/Advertising Clause") (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 13, Ex. F, at 12, 13, Ex. G, at 13, Ex. H, at 12, 13.) However, Plaintiff contends that because the "Commercial/Advertising" use clause was organized in each of the agreements under separate sections from "Exclusive Rights", "Nonexclusive Rights" and "Miscellaneous Rights; Exclusions; Exercise", Condé Nast and Annie Leibovitz intended for the Commercial/Advertising Clause to create a covenant rather than a condition to the nonexclusive license granted by Leibovitz to Conde Nast or a condition to Leibovitz' rights as the copyright holder.

Several material facts support Plaintiff's assertion that the Commercial/Advertising Clause is a covenant and therefore an issue of contract law rather than a copyright matter. First, Each of the Condé Agreements states that "[a]ll rights with regard to the [Images] not expressly granted herein are retained by Contributor". (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 12, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.) Second, each of the Condé Agreements delineate three separate sections for terms related to the license granted by Leibovitz to Condé Nast for use of the Images – "6. Exclusive Rights", "7.Nonexlusive Rights" and "Miscellaneous Rights; Exclusions; Exercise". *Id.* The Commercial/Advertising Clause is under a separate section entirely "Releases/Restrictions". *Ibid.* Further, and most importantly, ***Condé Nast itself was not granted any "commercial, merchandising, or advertising" rights in the Images***. The Condé Agreements each explicitly state:

> Notwithstanding the foregoing, the rights granted in this agreement to Company do not include the right to use any Work, or Artist's name or likeness (or other personal indicia), for any the following purposes: (i) the advertising or promotion of any third-party

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

product, service or brand; (ii) merchandising; (iii) third-party syndication and/or licensing other than as expressly permitted herein or as otherwise agreed; (iv) any anthology, book, collection, portfolio, exhibition or similar publication or project in which photographs by A1tist comprise fo1ty percent (40%) or more of the photographs (and/or artworks) included therein; or (v) any usage or exploitation unrelated to any of the Publications and/or Company (i.e., the CONDÉ NAST brand). (ECF 33-2, Duff Decl. ¶¶ 7-10, Ex. E, at 11, Ex. F, at 11, Ex. G, at 11, Ex. H, at 11.)

"[A] license is an authorization by the copyright owner to enable another party to engage in behavior that would otherwise be the exclusive right of the copyright owner, but without transferring title in those rights." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 965 (9th Cir. 2010). "In an exclusive license, the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others." *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996), *Citing Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir. 1990). Moreover, a "nonexclusive license, does not transfer ownership of the copyright to the licensee. The copyright owner simply permits the use of a copyrighted work in a particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768 (7th Cir. 1996). Condé Nast has explicitly not been granted any rights or license in regards to the commercial, advertising, or promotional use of the Images. If they have no license, whether exclusive or non-exclusive, then there is nothing in the Condé Agreements that would interfere with Trunk Archive's rights under the Artist Agreement.

As such, the Commercial/Advertising Clause in the Condé Agreements must be treated as a covenant and not a condition to the Condé Agreements as a whole. "Importantly, copyright law is clear that a licensee's breach of a covenant in a copyright license does not rescind the authorization to use the copyright work, but rather provides the licensor with a cause of action for a breach of contract". See *Davis v. Tampa Bay Arena, Ltd.*, No. 8:12-cv-60-T-30MAP, 2013 U.S. Dist. LEXIS 90602 (M.D. Fla. June 27, 2013), See also *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998); *Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 233-34 (E.D.N.Y. 2007); see also *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753-54 (11th Cir. 1997) (breach of a covenant in a copyright license does no more than provide licensor an opportunity to seek rescission of the license, but does not constitute an ab initio rescission of the licensee's permission to use a copyrighted work); *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 2276, 2010 WL 148389, at *6 (E.D.Wis. Jan. 12, 2010) (quoting and relying on *Graham* ); *RT Computer Graphics, Inc. v. U.S.*, 44 Fed.Cl. 747, 756-57 (Fed.Cl.1999) (same). If Leibovitz were to violate the Commercial/Advertising Clause, Condé would not be able to pursue any third parties who may

17
PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

have been granted a license, because Condé Nast is not an exclusive licensee, or any licensee at all for that matter, as it pertains to the commercial, advertising, or promotional use of the Star Wars Photographs. Condé Nast would only be able to pursue Leibovitz for a breach of contract related to the Condé Agreements.

Under the summary judgment standard, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 Here, the undisputed fact that Condé Nast explicitly does not have any commercial, advertising, or promotional use of the Images easily meets Plaintiff's burden that there is no genuine issue of material fact and Defendants have failed to present evidence as to how Plaintiff's rights would be effected a covenant in a private agreement.

## VI.   The Court's Finding and Recommendation, the Order Adopting the Finding and Recommendations, and the Judgment in the Oregon Action Were All Vacated and Therefore Do Not Exist In The Eyes of The Court.

Defendant presented several facts regarding the Oregon Action that Plaintiff has not disputed. However, Defendant has deliberately failed to provide the most important undisputed fact as to the Oregon Action. First, following a judgment entered against Plaintiff Trunk Archive, Trunk Archive moved for an appeal to the 9th Circuit Court of Appeals (ECF 41-3, Suppl. Murray Decl. ¶5, *See Great Bowery, Inc. v. Cascade Digit. Media, LLC*, 2022 U.S. App. LEXIS 22039.). Second, during pendency of appeal the Parties in the Oregon Action reached a confidential settlement agreement and the Court's Findings and Recommendation, the Order Adopting the Finding and Recommendations, and the Judgment, were vacated in their entirety. (ECF 41-3, Suppl. Murray Decl. ¶6-8, Exhibit A, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv- 00009-MK (D. Or. Jan. 2, 2020), ECF No. 46.).

But a vacated opinion or order is "officially gone".  *Zuniga v. Comm'r of Soc. Sec.*, 772 F. App'x 870 (11th Cir. 2019), *citing United States v. Sigma Int'l, Inc.,* 300 F.3d 1278, 1280 (11th Cir. 2002). That is, a vacated opinion has "no legal effect whatever. [It is] void." *Id*. "None of the

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

statements made [therein] has any remaining force[.]" *Id*. Stated differently, "a general vacat[ur] . . . vacates the entire judgment below, divesting the lower court's earlier judgment of its binding effect." *United States v. M.C.C. of Fla., Inc*., 967 F.2d 1559, 1561 (11th Cir. 1992). See also *Quarles v. Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ("The judgment of the district court was vacated; thus, no final judgment on the merits exists.").

Defendants are essentially presenting the existence of the Oregon Action as proof that Trunk Archive does not have standing in the current claim. In order for Defendants to overcome Plaintiff's motion, Defendant must produce "specific facts, by affidavit or other evidentiary materials, to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The fact that Report and Recommendation, the Order Adopting the Report and Recommendation and the Judgment itself in the Oregon Action were all vacated supports Plaintiff's motion as a vacated opinion nor order has no remaining force and "no final judgment on the merits exist". As the Court's decision in *Cascade* was vacated, Defendants' have effectively presented nothing to show that there is a genuine issue for trial.

Moreover, even if the decision were not vacated, the Oregon Action involved two Annie Leibovitz photographs that are not subject to the current action and thus the facts are not "substantially similar". (ECF 41-3, Supplemental Declaration of Taryn R. Murray ¶4, ("Suppl. Murray Decl.") ECF 33-2, Duff Decl. ¶ 16, Ex. M, at 6-7); Compl. at 5-7, *Great Bowery Inc. v. Cascade Digital Media LLC*, No. 6:20-cv- 00009-MK (D. Or. Jan. 2, 2020), ECF No. 1.).

Thus, summary judgment must be granted in Plaintiff's favor.

## VII.    Defendant CS Does Not Contest The Theory of Liability Or Arguments Against Its Affirmative Defenses.

Defendant has solely disputed Plaintiff Trunk Archive's standing to sue for copyright infringement. If the Court grants summary judgment as to standing in Plaintiff's favor, the Court should also grant summary judgment in favor of Plaintiff as to Defendant CS' liability because, under Fed. R. Civ. P. 56(a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.". Summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). The moving party need only point to the absence of evidence proffered by

the non-moving party. *Celotex,* 477 U.S. at 325. Defendant CS has not disputed any of the facts used as the basis for Plaintiff's arguments as to Defendant's CS' liability, their affirmative defenses, or Trunk Archive's ability to seek statutory damages. Therefore, no genuine dispute as to any material fact related to the remaining elements of copyright infringement, and summary judgment must be entered in favor of Plaintiff as to the issues of liability, Defendants' affirmative defenses, and Trunk's entitlement to statutory damages.

## VIII.   CONCLUSION

In conclusion, Plaintiff Great Bowery Inc. d/b/a Trunk Archive has established that there is no genuine issue of material fact as to whether they were conveyed the exclusive §106 rights to distribute, reproduce, and display the Star Wars Photographs via by Leibovitz via the Artist Agreement. Thus, Trunk Archive has standing to enforce the Star Wars Photographs as an exclusive licensee under 17 U.S.C. 204. Therefore, Plaintiff Trunk Archive requests that the Court grant Plaintiff's Motion for Summary Judgment in its entirety.

DATED: May 31, 2024                                  Respectfully submitted,

<u>**s/ Taryn Rose Murray**</u>
Taryn Rose Murray, Esq.
*Admitted Pro Hac Vice*
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*


<u>**/s/ Melissa A. Higbee**</u>
Melissa A. Higbee, Esq.
State Bar No. 62465
**HIGBEE & ASSOCIATES**
1504 Brookhollow Dr., Ste 112
Santa Ana, CA 92705-5418
(714) 617-8340
(714) 597-6559 facsimile
tmurray@higbee.law
*Attorney for Plaintiff*

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT

## <u>CERTIFICATE OF SERVICE</u>

I certify that Plaintiff's Reply in Support of Its Motion for Summary Judgment has been served on all parties who have appeared in this case by using the Court's CM/ECF system, which will automatically send an email notification of such filing to all attorneys of record listed with the Clerk of the Court.


*<u>/s/ Taryn R. Murray</u>*
Taryn R. Murray
