# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 04, 2026

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY_____JG_____D.C.

**Jun 4, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number:  24-12482-AA
Case Style: Great Bowery Inc. v. Consequence Sound LLC, et al
District Court Docket No: 9:23-cv-80488-RLR

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12482
_____

GREAT BOWERY INC.,
 a.k.a. Truck Archive,

*Plaintiff-Appellant,*

*versus*

CONSEQUENCE SOUND LLC,
CONSEQUENCE MEDIA GROUP INC.,
DOES 1 THROUGH 10, INCLUSIVE,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-80488-RLR
_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued
on this date in this appeal is entered as the judgment of this Court.

Entered: May 5, 2026

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE: June 4, 2026

**FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-12482

————————————————

GREAT BOWERY INC.,
  a.k.a. Trunk Archive,

                             *Plaintiff-Appellant,*

*versus*

CONSEQUENCE SOUND LLC,
CONSEQUENCE MEDIA GROUP INC.,
DOES 1 THROUGH 10, INCLUSIVE,

                             *Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-80488-RLR

————————————————

2                      Opinion of the Court                    24-12482

Before JORDAN and NEWSOM, Circuit Judges, and CORRIGAN,[*] DISTRICT JUDGE.

JORDAN, Circuit Judge:

Annie Leibovitz is a world-famous photographer known for her portraits of celebrities. *See, e.g.*, Jane Bua, *Annie Leibovitz Outside the Frame*, The New Yorker (Nov. 17, 2025). In 2014, she signed an agreement with Trunk Archive, a business operated by Great Bowery Inc., for exclusive worldwide representation to license her photographs. Great Bowery then brought suit, in its own name, against several defendants for copyright infringement of photos taken by her.

The question presented on appeal is whether Great Bowery has statutory standing under the Copyright Act to bring this action. The district court ruled that it did not and granted summary judgment to the defendants.

After review of the record, and with the benefit of oral argument, we conclude that the district court's understanding of copyright law was not quite right. The court believed that, because Ms. Leibovitz retained certain rights in her written agreement, Great Bowery lacked standing. Because that analysis was mistaken, we vacate the summary judgment order and remand for further proceedings.

---

[*] The Honorable Timothy Corrigan, United States District Judge for the Middle District of Florida, sitting by designation.

**I**

In 2014, Ms. Leibovitz and Trunk Archive executed a written "Artist Agreement." Under the Agreement, Ms. Leibovitz "grant[ed] to Trunk Archive the exclusive worldwide right to license, market, and promote" certain images she created. But Ms. Leibovitz reserved the "right to collaborate with or deliver" any of those images "to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors [she] deems of interest."

In the decade that followed, three new *Star Wars* movies were filmed. Each time, Condé Nast invited Ms. Leibovitz to the movie set to take photographs of the cast and crew for *Vanity Fair* Magazine. For each photo shoot, Condé Nast signed written agreements with "AL Studio, LLC . . . f/s/o Annie Leibovitz." Each agreement contained a "Reservation of Rights" clause, which provided that "[a]ll rights with regard to the Works not expressly granted herein are retained by Contributor." The term "Contributor" was defined as AL Studio, LLC, not Ms. Leibovitz.

In 2022, Great Bowery discovered that some of the *Star Wars* photos taken by Ms. Leibovitz appeared in articles on www.consequence.net, a website operated by at least one of the defendants. It filed this lawsuit against Consequence Sound LLC and Consequence Media Group Inc. a few months later.

During discovery, Great Bowery produced an "Authorization Letter" signed by Ms. Leibovitz in 2018. The letter reads as follows:

4                     Opinion of the Court                 24-12482

> This letter is to confirm that Great Bowery, Inc. d/b/a Trunk Archive . . . [is] hereby authorized by me to act on my behalf in all matters relating to copyright infringement of my work. Such authorization includes sending cease and desist letters, initiating and prosecuting litigation or other formal proceedings in my name and on my behalf as a named claimant or co-claimant in relevant courts, administrative bodies or private forums in order to enforce my copyrights, negotiating settlement terms/conditions and monetary restitution, receiving payments, seeking, obtaining and enforcing judgments and signing all documents and providing all reasonable cooperation relating to these matters. In executing this document, I represent and warrant that I am the holder of all rights, title and interest in and to the copyrighted works for which Trunk Archive will be acting on [my] behalf. I further acknowledge and agree that neither my other agents nor I will separately attempt to settle or resolve any instances of infringement without first notifying Trunk Archive thereof in order to ensure that the work of Trunk Archive . . . on [my] behalf is not undermined. . . .

D.E. 33-13.

Two days before the deadline for dispositive motions, and seven months after the deadline to join parties, Great Bowery moved to amend the complaint. Its proposed amended complaint would have added Ms. Leibovitz as a co-plaintiff. The district court summarily denied the motion as untimely.

24-12482                Opinion of the Court                5

Without taking any depositions, the parties cross-moved for summary judgment. The defendants—to whom we refer collectively as "Consequence"—argued that Great Bowery lacked statutory standing to bring an action for copyright infringement because it is not a "legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b).

The district court agreed with Consequence, concluding that neither the Artist Agreement nor the Authorization Letter granted Great Bowery an exclusive right under a copyright. Regarding the Artist Agreement, the court reasoned that, because Ms. Leibovitz retained for herself the right to use the photographs in collaborations with Robert Pledge and Contact Press Images, she did not grant Great Bowery an "exclusive" license. And because Great Bowery was not the owner of an exclusive right, it lacked standing under § 501(b) to sue for infringement. The court therefore granted Consequence's motion for summary judgment and denied Great Bowery's.

## II

We first address Great Bowery's challenge to the order denying leave to amend the complaint. We review the denial of such a motion for abuse of discretion. *See, e.g., Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006).

Great Bowery contends that the district court had no discretion here. Because 17 U.S.C. § 501(b) provides that "[t]he court . . . shall permit the intervention[ ] of any person having or

6                    Opinion of the Court                    24-12482

claiming an interest in the copyright," Great Bowery argues that the court was required to grant the motion no matter how untimely it was.

We disagree. First, and critically, Ms. Leibovitz never moved to intervene, so § 501(b) is inapplicable. Second, even if she had moved to intervene, and even if § 501(b) gave her an unconditional right to do so, a motion to intervene under Rule 24(a) must be timely. *See* Fed. R. Civ. P. 24(a); *N.A.A.C.P. v. New York*, 413 U.S. 345, 365 (1973). *Cf. Photographic Illustrators Corp. v. Orgill, Inc.*, 316 F.R.D. 45, 49 (D. Mass. 2016) (copyright claimant's motion to intervene, filed 20 months after learning of the infringement action, was untimely). Great Bowery does not explain why its motion for leave to amend—even if functionally treated as a motion by Ms. Leibovitz to intervene—was timely. We therefore affirm the district court's denial of the motion for leave to amend.[1]

### III

Turning to the merits, we review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in its favor. *See Hoak v. Ledford*, 153 F.4th 1148, 1153 (11th Cir. 2025). Summary judgment is appropriate only "if the movant shows that

---

[1] If Ms. Leibovitz believed that the denial of Great Bowery's motion for leave to amend somehow constituted a denial of her intervention, she could have separately appealed. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004). But she did not do so.

24-12482                    Opinion of the Court                    7

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a reasonable fact finder could draw an inference in the non-movant's favor as to any material factual issue, summary judgment is not appropriate. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). And "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1267 (11th Cir. 2016) (internal quotation marks and citation omitted).

When the nonmoving party has the burden of proof at trial, "[t]he moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Four Parcels*, 941 F.2d at 1437 (internal quotation marks and ellipsis omitted). "If the moving party shows the absence of a triable issue of fact . . . the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Id.*

## A

We begin with some general principles. A copyright is a limited monopoly in an "original work[ ] of authorship." 17 U.S.C. § 102(a). *See also Stewart v. Abend*, 495 U.S. 207, 228–29 (1990) (describing copyright as a "limited monopoly"). Examples include literary works, musical works, and works of visual art.

In general, the owner of a copyright "has the exclusive rights to do and to authorize" five things: (1) reproduce the copyrighted work; (2) prepare derivative works based on the copyrighted work; (3) distribute copies of the copyrighted work; (4) perform the copyrighted work publicly; and (5) display the copyrighted work publicly. *See* 17 U.S.C. § 106. Other rights attach to certain kinds of copyrighted works as well. *See generally* 17 U.S.C. §§ 106(6), 106A. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright[.]" 17 U.S.C. § 501(a).

This appeal concerns § 501(b), which reads as follows:

> The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.

The text of the provision limits those who may bring a copyright infringement action to "legal and beneficial owners of an exclusive right under a copyright." *See John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 405 (2d Cir. 2018); *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 381 (7th Cir. 2011); *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) (en banc). *Cf. Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1297 (11th Cir. 2011) (stating that the holder of a nonexclusive right lacked statutory standing).

The words "exclusive right under a copyright" refer to the exclusive rights listed in § 106. *See John Wiley & Sons*, 882 F.3d at 402; *HyperQuest*, 632 F.3d at 382; *Silvers*, 402 F.3d at 885. To have

24-12482          Opinion of the Court               9

statutory standing, a plaintiff does not need to be the owner of *all* the exclusive rights comprised in a copyright; it only needs to be the owner of "that particular right" which the defendant has allegedly infringed.  *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015); *HyperQuest*, 632 F.3d at 382; *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982); 1 Paul Goldstein, Goldstein on Copyright § 15.5.1 & n.19 (3d ed. & 2026-1 supplement).  A copyright plaintiff bears the burden of proving that he is the owner of that right to establish his standing.  *See DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978, 986 (9th Cir. 2017); *Urbont v. Sony Music Ent.*, 831 F.3d 80, 88 & n.6 (2d Cir. 2016); *HyperQuest*, 632 F.3d at 385.

Under the Copyright Act of 1976, the bundle of exclusive rights that comes with a copyright is divisible.  *See N.Y. Times Co., Inc. v. Tasini*, 533 U.S. 483, 495–96 (2001); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.02 (Oct. 2025 update); 2 William F. Patry, Patry on Copyright § 5:123 & n.7 (Mar. 2026 update).  That means that "[a]ny of the exclusive rights . . . including any subdivision of any of the rights specified in section 106, may be transferred . . . and owned separately."  17 U.S.C. § 201(d)(2).

For example, the author of a novel could transfer to a publisher the exclusive right to prepare derivative works based on the novel while retaining all other rights under § 106.  Alternatively, the author could subdivide her derivative-works right by transferring to a movie studio the exclusive right to

prepare a screenplay based on the novel and transferring to a publisher the exclusive right to create comic books based on the novel.  In both scenarios, the author, the publisher, and the movie studio are all "copyright owners" under the Act.  *See* 17 U.S.C. § 101 ("'Copyright owner', with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.").  *Accord* 3 Nimmer § 10.02 & n.5; 2 Patry § 5:123 & n.7.  And each "would be entitled to sue for infringement of its particular right." *HyperQuest*, 632 F.3d at 382.

There is "no limit on how narrow the scope of licensed rights may be and still constitute a 'transfer' of ownership, as long as the rights thus licensed are 'exclusive.'" 3 Nimmer § 10.02 & n.9.

> An exclusive license to a newsstand dealer to distribute a given edition of a given newspaper at a designated corner on a particular afternoon would convey to such dealer the "ownership" of such right, so that if another dealer were to . . . distribute the same paper at the same time and place, the first dealer could sue the second for infringement of his distribution right.

*Id.*  Here's another example.  The copyright holder of a musical could grant a theater the *exclusive* right to publicly perform the musical on Monday through Thursday, while retaining for itself the *exclusive* right to publicly perform the musical on Friday, Saturday, and Sunday.  In that case, if a third party performed the musical on a Monday, only the theater could sue him for infringement.  And if a third party performed the musical on a

24-12482                Opinion of the Court                 11

Friday, only the copyright holder could sue him for infringement. *See id.*

**B**

Sometimes, a copyright holder will use different words to convey that she is transferring ownership of an exclusive right. Rather than *"transferring* the exclusive right to prepare a screenplay based on the novel," the author might *"grant* the movie studio an *exclusive license* to prepare a screenplay based on the novel." The effect is the same. Under the Copyright Act, an "exclusive license" is a "transfer of copyright ownership." 17 U.S.C. § 101. *Accord* 2 Patry § 5:101 ("A copyright owner may transfer copyright ownership by assignment or *exclusive license*, the two being synonymous. An exclusive license therefore *is* copyright ownership.") (footnote omitted). Thus, an exclusive licensee is an "owner of an exclusive right," § 501(b), and can sue for infringement of that right. *See Eden Toys*, 697 F.2d at 32.

Because the grant of an exclusive license is a transfer of copyright ownership, an exclusive license "is not valid unless . . . [it] is in writing and signed by the owner of the rights conveyed" or her agent. *See* 17 U.S.C. § 204(a). The "purpose of [§] 204(a), like the Statute of Frauds, is . . . to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1996) (parentheses omitted).

12 Opinion of the Court 24-12482

On the other hand, a nonexclusive license is not a "transfer of copyright ownership." 17 U.S.C. § 101. "In essence, a nonexclusive license is a covenant not to sue [for infringement] so long as the licensee uses the work in the manner contemplated" by the parties' agreement. *See* 2 Patry § 5:127 & n.4. The holder of a nonexclusive license is not an owner of an exclusive right and therefore lacks statutory standing to sue for infringement. *See Saregama*, 635 F.3d at 1297.

Just because a contract or other writing says that the copyright holder is granting the licensee an "exclusive license" or "exclusive right" does not necessarily mean that she is. "The fact that [an agreement] uses the phrase 'exclusive license' or its equivalent . . . is something of which [a court must] take note, but it is not dispositive. It is the substance of the agreement, not the labels that its uses, that controls our analysis." *HyperQuest*, 632 F.3d at 383. *Accord Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) ("When determining whether a contract has transferred exclusive rights, we look not just at the labels parties use but also at the substance and effect of the contract."). To constitute an exclusive license, the copyright holder must "permit[ ] the licensee to use the protected material for a specific use *and* . . . promise[ ] that the same permission will not be given to others." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) (emphasis added). *See also Minden Pictures*, 795 F.3d at 1005 (agreeing with *Shaver*).

## C

We first address Great Bowery's contention that Consequence is not permitted to challenge its standing under § 501(b). We then turn to the district court's summary judgment order.

## 1

Great Bowery argues that, under our decision in *Imperial Residential Design*, 70 F.3d at 99, Consequence cannot challenge its statutory standing because Ms. Leibovitz does not dispute that standing. We are not persuaded.

In *Imperial Residential Design*, an architect designed a model home. In 1988, he entered into an oral agreement with a developer transferring all his rights in the design. Two years later, the developer wanted to sue a competitor for copyright infringement, so the architect and developer signed a written agreement ratifying the 1988 oral agreement. *See id.* at 97. After litigation commenced, the competitor challenged the developer's standing because the written agreement did not transfer the right to sue for past infringements. *See id.* In response, the architect and developer signed a second written agreement, which they said memorialized their 1988 oral understanding to transfer all accrued claims. *See id.* The district court refused to consider the second agreement and dismissed the action. *See id.* at 98. The developer and architect then filed a second lawsuit for infringement. This time, they brought the suit as co-plaintiffs. The competitor again moved to dismiss the developer for lack of statutory standing. *See id.*

14                          Opinion of the Court                    24-12482

After an initial appeal and a remand to the district court, we rejected the competitor's standing challenge.  We explained that "the chief purpose of [§] 204(a), like the Statute of Frauds, is . . . to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership."  *Id.* at 99 (parentheses omitted).  Thus, "where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke [§] 204(a) to avoid suit for copyright infringement."  *Id.* (citing *Eden Toys*, 697 F.2d at 36).  So we held that, "where both the original owner and the transferee have joined as plaintiffs in the same lawsuit[,] we will not let the alleged infringer invoke [§] 204(a)."  *Id.*  Other circuits have issued similar rulings.  *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 830 (3d Cir. 2011); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 592–93 (7th Cir. 2003); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1429 (9th Cir. 1996).

Admittedly, the opinion in *Imperial Residential Design* is somewhat nebulous as to its scope.  But we do not understand the language quoted above to mean that a copyright owner can, by consent, confer a licensee standing to sue for infringement without transferring an exclusive right.  Rather, we believe the best reading of *Imperial Residential Design* is that a defendant cannot challenge the sufficiency of a writing under § 204(a).  "We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).  And our

understanding of *Imperial Residential Design* is bolstered by decisions of our sister circuits and a leading copyright treatise.

For our holding in *Imperial Residential Design*, we cited *Eden Toys*, 697 F.2d at 36. There, too, the defendant argued that the licensee-plaintiff did not own the exclusive right that had been infringed. In response, the licensee produced a signed writing that allegedly ratified an oral transfer of rights that predated the infringement. Given that § 204(a)'s purpose is to protect copyright holders, the Second Circuit remarked that "it would be anomalous to permit a third party infringer to invoke" the provision where there is no dispute between the copyright holder and exclusive licensee. *See id.* Nonetheless, it remanded the case for findings on whether the licensor and plaintiff actually had an oral agreement before the infringement. *See id.* In other words, even though the licensor consented to the plaintiff's suit against the infringer (by signing the ratification), the plaintiff was not relieved of its burden of proving that it owned the relevant exclusive right at the time of the alleged infringement.

In *Barefoot Architect*, 632 F.3d at 830–31, the Third Circuit resolved an equivalent issue in a similar manner. In response to the defendant's motion for summary judgment, the plaintiff claimed that the copyright was orally transferred to him before the infringement began, and the transfer was later codified in writing. *See id.* at 827. The Third Circuit held that, even though § 204(a) allows ratification of an oral transfer *ab initio*, the plaintiff had not evinced the existence of a prior oral agreement. *See id.* at 831.

16                    Opinion of the Court                    24-12482

Thus, the defendant was entitled to summary judgment because no reasonable jury could conclude that the plaintiff owned the copyright at the time of infringement. *See id.* at 833.

In both *Eden Toys* and *Barefoot Architect*, the defendant was permitted to challenge whether the plaintiff owned the exclusive right that the defendant allegedly infringed, even though the copyright holder did not dispute the plaintiff's standing. So here, Consequence should be allowed to contest whether Great Bowery owned exclusive rights as a result of the Artist Agreement or the Authorization Letter.

Significantly, in recent years the Second and Ninth Circuits have expressly rejected the argument that Great Bowery makes here.

In *Urbont*, 831 F.3d at 83–84, the composer of a movie theme song sued a recording artist who sampled it in a hip hop recording. The artist argued that the composer could not prevail because he created the song as a "work made for hire" for the movie studio. *See id.* at 85. Like Great Bowery, the composer argued that the artist could not challenge his standing because the movie studio had "acquiesced" to his claim of ownership. *See id.* at 86. The Second Circuit rejected the composer's argument, explaining that even if his characterization of the movie studio's position was correct, the studio's acquiescence did not preclude the artist from challenging the composer's ownership. *See id.* at 87. The burden was on the composer to "prove ownership not only as an element of a copyright infringement claim, but also to assert their standing

24-12482               Opinion of the Court               17

to bring suit." *Id.* at 88 n.6. Therefore, the artist could "challenge the validity of the underlying ownership transfer." *Id.* at 88. The Second Circuit equated the oft-cited sentence from *Eden Toys* with the proposition that "[c]ourts are hesitant to allow an outside infringer to challenge the *timing or technicalities* of the copyright transfer." *Id.* at 87 (quoting *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 420 F.3d 388, 394 (5th Cir. 2005)) (emphasis added).

Citing *Urbont*, the Ninth Circuit rejected the same argument in *DRK Photo*, 870 F.3d at 986. It explained that, "[a]lthough a third party may not raise noncompliance with . . . § 204(a)'s writing requirement as a defense to a copyright transfer where the parties to the transfer do not dispute its existence, a third party is not foreclosed from challenging a plaintiff's ownership for purposes of standing[.]" *Id.* (citations omitted).

According to the Nimmer treatise, the rule barring a third-party defendant from contesting a written transfer of rights "applies solely to the context of which writings qualify as a transfer—it cannot confer standing absent proof of the requisite writing altogether." 3 Nimmer § 10.03 (footnotes omitted). The treatise cites Judge Buchwald's words with approval: "[W]here defendants seek to raise a meaningful challenge to the plaintiff's infringement claim by positing ownership in a third party, the seeming absence of a dispute between the putative owners should not forestall such a challenge." *Id.* (quoting *Urbont v. Sony Music*

18               Opinion of the Court               24-12482

*Ent.*, 100 F. Supp. 3d 342, 349 (S.D.N.Y. 2015), *vacated in part on other grounds*, 831 F.3d 80 (2d Cir. 2016)).[2]

The reading of *Imperial Residential Design* urged by Great Bowery would "lead to the anomalous result of permitting copyright infringement plaintiffs to proceed even where they may lack standing to sue simply because [a licensor] has not challenged the validity of their copyright." *Urbont*, 831 F.3d at 88 n.6. That view is untenable and unsupported by any copyright authorities.

Under *Imperial Residential Design*, a defendant cannot defeat a claim of copyright ownership by showing that a written copyright transfer didn't satisfy the requirements of § 204(a) when the parties to the writing do not dispute its satisfaction. But Consequence does not make such an argument here. It instead asserts that Great Bowery lacks an ownership interest because Ms. Leibovitz did not actually transfer one. Because Great Bowery must ultimately prove that it owns the exclusive right that was allegedly infringed, Consequence may challenge Great Bowery's copyright infringement claim on this ground.[3]

---

[2] The Patry treatise asserts that the entire line of cases "barring a third-party defendant from contesting the validity of an assignment," including *Imperial Residential Design*, is "erroneous." *See generally* 2 Patry § 5:114. It reasons that a copyright infringement defendant must be permitted to challenge a plaintiff's § 501(b) standing on any ground, including "the sufficiency of an assignment" under § 204(a). *See id.*

[3] Our understanding of *Imperial Residential Design* is consistent with our recent decision in *DISH Network L.L.C. v. Fraifer*, No. 24-10223, ____ F.4th ____, 2026 WL 959813 (11th Cir. 2026). In *DISH*, the defendants challenged the district

24-12482              Opinion of the Court                    19

**2**

Great Bowery asserts that the Artist Agreement granted it ownership of exclusive rights.  Paragraph 1 of the Artist Agreement reads as follows:

> Subject to the terms and conditions of this Agreement, [Ms. Leibovitz] hereby grants to Trunk Archive the exclusive worldwide right to license, market, and promote the Licensed Images (as defined below) for all uses in any and all media. Notwithstanding the foregoing, nothing contained herein shall restrict [Ms. Leibovitz's] right to collaborate with or deliver any Licensed Images to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors [Ms. Leibovitz] deems of interest.  [Ms. Leibovitz] shall make best efforts to notify Trunk Archive in advance if the use of a Licensed Image by Robert Pledge and/or Contact Press Images may conflict with the rights granted herein.

---

court's determination that the licensing agreements between the licensor and plaintiff properly transferred the exclusive rights to distribute and publicly perform the works. *See id*. at *5.  We held that the defendants were precluded from making that challenge because a representative of the licensor affirmed in a declaration that it had transferred those § 106 rights.  *See id*.  In other words, the defendants wanted to challenge the sufficiency of the writing between the licensor and plaintiff.  Here, Consequence argues that the Artist Agreement did not transfer any § 106 rights, and that the Authorization Letter supports its interpretation.  Great Bowery must prove its ownership interest, and Consequence is not precluded from challenging that interest.

20                    Opinion of the Court                    24-12482

D.E. 36-1.

In the view of the district court (and that of Consequence), Paragraph 1 dispositively demonstrates Great Bowery's *lack* of standing. *See* D.E. 45 at 3. The main problem for Great Bowery, the court reasoned, is that Ms. Leibovitz overrode the supposed grant of exclusive rights by "retain[ing] for herself the right to use or deliver the photographs for any purpose . . . that [she] 'deems of interest.'" *Id*. Because "Ms. Leibovitz clearly retained the right to grant licenses to other parties at her own discretion" and "retained the same rights for herself," the court concluded that she had not granted Great Bowery an *exclusive* license. *See id*. at 5 n.4, 7.

That is not quite right. Ms. Leibovitz's retention of certain rights does not automatically doom Great Bowery's asserted status as an exclusive licensee. As noted, the § 106 rights are divisible and subdivisible. So even if Ms. Leibovitz retained for herself the *exclusive* right to "deliver" her photographs "to Robert Pledge and/or Contact Press Images for use in special projects or other endeavors," it is possible that Great Bowery was granted other exclusive § 106 rights to the same photos. When one person owns some exclusive rights under a copyright and another person owns other exclusive rights, each is "entitled to sue for infringement of its particular right." *HyperQuest*, 632 F.3d at 382.

Consequence argues in the alternative that Great Bowery "could not have received an exclusive license" to the photographs because Condé Nast held a "nonexclusive right to publish and print each of the [photographs] as they appeared in [its] publications . . .

24-12482                 Opinion of the Court                      21

at any time for the full term of the copyright." Appellees' Br. at 17 (internal quotation marks omitted). Therefore, Consequence contends, "[a]ny license granted to [Great Bowery] would necessarily be nonexclusive because it would coexist with Condé Nast's rights." *Id.*

This argument is also incorrect. To have statutory standing under the Copyright Act, the plaintiff must be the legal or beneficial owner of an exclusive right afforded by § 106. *See John Wiley & Sons*, 882 F.3d at 402. When the original copyright holder grants an exclusive license, she is really transferring ownership of some stick in the bundle of § 106 rights. *See* 1 Goldstein § 15.5 & n.7. That is why an exclusive licensee has statutory standing. *See id.* On the other hand, when the owner grants a nonexclusive license, she is merely giving the licensee permission to exercise one of her rights in a nonexclusive manner. *See Shaver*, 74 F.3d at 775; *Davis*, 505 F.3d at 99. The granting of such permission does not change the fact that the copyright holder remains the owner of the § 106 rights in question. *See* 17 U.S.C. § 101 (defining "transfer of copyright ownership"); *HyperQuest*, 632 F.3d at 384 (explaining that a licensor who grants a nonexclusive license "remains the owner" of the right licensed). And because she is the owner, she may subsequently transfer her ownership interest in one of the § 106 rights by granting someone else an *exclusive license*. *See* 3 Nimmer § 10.02 & n.31.3.[4]

_____

[4] This scenario is specifically contemplated by 17 U.S.C. § 205(e)(1).

22                    Opinion of the Court                    24-12482

To illustrate, suppose "A" is the copyright holder of a painting. "A" grants "B" a nonexclusive license to make and sell prints of the painting in Florida. Then, "A" grants "C" the worldwide exclusive license to reproduce the painting. In this scenario, "C" now owns the exclusive right to reproduce the painting and can sue third parties who infringe that right. As long as "B" stays within the scope of her nonexclusive license, "C" might not be able to sue "B." *See generally* § 205(e)(1); 3 Nimmer § 10.07[B]. But the fact that "B" has permission to make prints in Florida does not change the status of "C" as the owner of the reproduction right.

By the same token, Condé Nast's nonexclusive license does not affect whether Great Bowery received an exclusive license (an issue we do not decide in this opinion). So the particular language from the Condé Nast agreements quoted above is not material to whether Great Bowery is the owner of an exclusive right.

The district court's order granting summary judgment in favor of Consequence relied on a misunderstanding of the law. We therefore vacate that order and remand for further proceedings.

**D**

On remand, the district court should also reconsider the import—if any—of the Authorization Letter. To the extent Great Bowery contends that the Letter is an independent grant of exclusive rights, the court should analyze that argument in light of this opinion. And to the extent the Letter serves to illuminate the meaning of the Artist Agreement, the court may need to first

24-12482               Opinion of the Court                    23

determine whether the Letter is admissible as parol evidence.  To do that, the court will need to decide which state's law governs the Agreement.

"As a general proposition, courts apply the same constructional rules to copyright contracts as they apply to contracts generally."  1 Goldstein § 5.3.2.  *Accord 3* Nimmer § 10.08 & n.2.3; *Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999).  *See also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 392 (6th Cir. 2007); *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 487 (2d Cir. 1998).  State contract law "is to be applied to the extent its use is not preempted by nor contrary to the policies of the . . . Copyright Act[ ]."  *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483 (5th Cir. Unit B 1981).  *Accord Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (same); *Walthal v. Rusk*, 172 F.3d 481, 485 (7th Cir. 1999) (same).  At this point, the parties have not provided any material information as to which law governs the Artist Agreement.

**E**

The parties raise several other arguments regarding Great Bowery's standing.

For example, Great Bowery contends that, because the Artist Agreement granted it the "exclusive worldwide right to license, market, and promote" Ms. Leibovitz's photographs, it "had the exclusive right . . . to authorize Consequence to reproduce, distribute, and display that work."  Appellant's Br. at 9.  Consequence responds that even if Great Bowery is Ms. Leibovitz's

exclusive licensing agent, "the exclusive right to authorize others to use the copyright" is "not a § 106 right." Appellees' Br. at 14 (internal quotation marks omitted).[5]

For its part, Consequence asserts that, per the Condé Nast agreements, "all rights" in the photographs were "retained by AL Studio," and "[t]here is no written transfer in the record of any rights in the [photographs] from AL Studio to [Ms.] Leibovitz or Great Bowery." *Id.* at 15–16 (brackets and internal quotation marks omitted). Great Bowery argues that, "at minimum, [it is] a beneficial owner of an exclusive copyright." Appellant's Br. at 24.

The district court did not reach any of these arguments because it believed that Ms. Leibovitz's retention of rights necessarily meant that Great Bowery was not the owner of an exclusive right. Because the court did not consider the parties' other arguments, we decline to address them on appeal. In general,

---

[5] We recognize that the district wrote the following in its summary judgment order: "[T]he problem for [Great Bowery] is twofold. First, the exclusive rights conveyed [in the Artist Agreement] are not identical to any of the [s]ix [e]xclusive [r]ights [c]onferred by [c]opyright." D.E. 45 at 3. We do not believe, however, that the court fully considered Great Bowery's and Consequence's respective points on this issue. *Compare generally Minden Pictures*, 795 F.3d at 1003 ("The right 'to authorize' these acts is also an 'exclusive right' under the Act."), *with* 6 Patry § 21:21 & n.9 (citing *Venegas-Hernandez v. Asociación de Compositores y Editores de Música Latinoamericana (ACEMLA)*, 424 F.3d 50, 57–60 (1st Cir. 2005)). Moreover, to the extent that the court believed that a copyright plaintiff must own an exclusive right that is "identical" to one of the § 106 rights, that is not correct because the § 106 rights are subdivisible.

24-12482               Opinion of the Court                25

"a court of appeals will not consider issues not reached by the district court, especially where the issues involve questions of fact." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1372 n.5 (11th Cir. 1998) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). *See also Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115–16 (11th Cir. 1994). As noted, the parties did not take any depositions during discovery. So we are hesitant to resolve these issues on the record as it stands.

## IV

We affirm the denial of Great Bowery's motion to amend the complaint, vacate the district court's order granting summary judgment in favor of Consequence, and remand for proceedings consistent with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 05, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  24-12482-AA
Case Style:  Great Bowery Inc. v. Consequence Sound LLC, et al
District Court Docket No:  9:23-cv-80488-RLR

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing.

Costs
Each party to bear its own costs.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion